# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs February 13, 2013

## STATE OF TENNESSEE v. BRIAN KERR

**Appeal from the Circuit Court of Maury County**
**No. 20854    Robert L. Jones, Judge**

---

**No. M2012-00290-CCA-R3-CD - Filed April 30, 2013**

---

Brian Kerr ("the Defendant") was convicted after a jury trial of driving under the influence, reckless driving, and failure to maintain his lane of travel. The trial court also found that the Defendant had violated the implied consent law. Following a sentencing hearing, the trial court sentenced the Defendant to an effective sentence of eleven months, twenty-nine days, suspended to probation after service of ten days in confinement. The Defendant appeals, challenging the sufficiency of the evidence for each conviction. The Defendant also contends that the trial court erred in instructing the jury regarding the Defendant's failure to submit to a blood alcohol test when the trial court had not yet ruled on whether the Defendant violated the implied consent law. Lastly, the Defendant contends that, if the trial court first rules that a defendant violated the implied consent law and then gives the jury instruction regarding the defendant's failure to submit to a blood alcohol test, the trial court is indirectly commenting on the evidence in violation of Article VI, Section 9 of the Tennessee Constitution. Upon our thorough review of the record, we affirm the Defendant's convictions for driving under the influence and failure to maintain his lane of travel. However, we reverse and dismiss the Defendant's conviction for reckless driving.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed in Part,**
**Reversed and Dismissed in Part**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Brian Kerr.

Robert E. Cooper, Jr., Attorney General & Reporter; Leslie E. Price, Senior Counsel; Mike Bottoms, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The Defendant was indicted in June 2011 for driving under the influence ("DUI"), possession of a legend drug without a prescription, reckless driving, failure to maintain his lane of travel, violation of the registration law, violation of the financial responsibility law, and violation of the implied consent law. These charges arose out of an incident which occurred on February 12, 2011. The Defendant proceeded to a jury trial on the DUI, possession of a legend drug without a prescription, reckless driving, and failure to maintain his lane of travel offenses on November 30, 2011, and the following proof was adduced:[1]

Trooper Brandon McCauley of the Tennessee Highway Patrol testified that he was assigned as a road trooper in Maury County, Tennessee, in February 2011. Trooper McCauley stated that he received forty hours of "detecting for DUI training" during his eighteen weeks of training at the police academy. He also attended a sixteen-hour course called "Roadside Impaired Driving Enforcement" which instructed officers how to detect a DUI and how to determine whether a person is impaired.

Trooper McCauley testified that he was on duty on February 12, 2011, in Maury County, Tennessee. At approximately 6:45 p.m. on this date, Trooper McCauley received a dispatch call that a traffic accident had occurred on U.S. 43 near Industrial Park Road. When Trooper McCauley arrived on the scene, the Defendant and an off-duty sheriff's deputy from Mississippi were present. He took some information from the off-duty deputy, and the deputy then left the scene.[2] Trooper McCauley also testified that upon his arrival to the scene he observed that the Defendant's truck was "sitting on the shoulder partially in the roadway" and that a dent was in the guardrail.

Trooper McCauley testified that upon contact with the Defendant he "noticed the odor of an intoxicating beverage coming from [the Defendant's] person" and "some slurred speech." He also observed that the Defendant was stumbling or staggering "a little." Trooper McCauley asked the Defendant where he had been that evening. He also asked the Defendant what he had been doing, how much he had to drink, and how long it had been since he had had his last drink. The Defendant told Trooper McCauley that he had been at Embers in Spring Hill and that he had consumed two 12-ounce Budweisers while there.

---

[1] The violation of the registration law and the violation of the financial responsibility law were dismissed by the State on November 30, 2011. The implied consent law violation was determined by the trial court on November 30, 2011, outside the presence of the jury. See infra p. 6.

[2] The off-duty deputy did not testify at the trial.

Trooper McCauley stated that the Defendant was very cooperative with him throughout his interactions with the Defendant.

Trooper McCauley next administered several field sobriety tests to the Defendant. Before he explained the field sobriety tests he administered, the State played the video recording from Trooper McCauley's patrol car, and it was entered as an exhibit. The video recording shows the following: the location of the Defendant's truck; Trooper McCauley administering the field sobriety tests to the Defendant; Trooper McCauley arresting the Defendant for DUI; Trooper McCauley reading the Defendant the implied consent law; the Defendant's refusal to submit to a blood alcohol test, as well as him signing the denial; and Trooper McCauley conducting an inventory search of the Defendant's truck before it was towed.

Trooper McCauley explained that the field sobriety tests are "divided attention tasks" which assist him in determining whether a person's ability to operate a vehicle is impaired. Trooper McCauley further explained that, while administering the tests, he looks for "clues" to determine whether a defendant is impaired. Before administering the tests, Trooper McCauley asked the Defendant whether he had any medical issues. The Defendant responded that he had pins in his ankle. Trooper McCauley then asked the Defendant where he was employed and what his job duties entailed. The Defendant responded that he was employed at General Motors on the production line and that he stood on his feet most of the day. Trooper McCauley stated that he was not familiar with that particular line of work or the physical tasks that were involved in that occupation. Nevertheless, Trooper McCauley determined that the Defendant physically could perform the field sobriety tests based on the Defendant's employment and Trooper McCauley's observations of the Defendant walking from his truck back to the guardrail. He stated that the Defendant "didn't seem to show any sign of physical impairment at that point from his ankles."

The Defendant first performed the walk and turn test. Trooper McCauley testified that it is a two-stage test, consisting of an instructional stage and a walking stage. During the instructional stage, Trooper McCauley explained to the Defendant how to perform the test and demonstrated how to perform the test. During this stage, the Defendant also was asked to stand with his right foot in front of his left foot and his hands out to his side. Trooper McCauley stated that, when the Defendant put his right foot in front of his left, he "kind of lost his balance there" and "went back and forth with his feet spread apart." This was a clue to him. After Trooper McCauley demonstrated how to perform the walk and turn test, the Defendant attempted to perform the test. The test is performed successfully by taking nine heel-to-toe steps, properly turning after the ninth step, then taking nine heel-to-toe steps back to the starting position, counting in numerical order aloud. The Defendant also was instructed to take the heel-to-toe steps on the white outer line of the roadway. During the

first nine steps, Trooper McCauley observed two more clues: the Defendant "step[ped] off line" and "miss[ed] his heel to toe." Trooper McCauley believed that the Defendant understood the instructions that he gave him but failed to perform the test to his satisfaction. In total, Trooper McCauley observed three clues during this test.

The next field sobriety test that Trooper McCauley administered was the one leg stand test. First, during the instructional stage, Trooper McCauley explained to the Defendant that he was supposed to raise one leg and count aloud until he was told to stop. When the Defendant began this test, he raised his left leg. Trooper McCauley observed the Defendant put his left leg back on the ground before Trooper McCauley told him he could do so. This constituted a clue to Trooper McCauley.

Next Trooper McCauley asked the Defendant to perform the walk to one leg test. During this test, the Defendant was instructed to raise his arms for balance and hop while on one leg. On this test, Trooper McCauley observed the Defendant put his leg down before he was supposed to, which was another clue. Lastly, Trooper McCauley asked the Defendant to perform the finger to nose test. The Defendant was instructed to tilt his head back, close his eyes, and touch the tip of his nose with the tip of his finger. He also was instructed which hand to use each time to touch his nose. Trooper McCauley stated that the Defendant missed touching the tip of his nose one time with each hand.

Based on these tests, Trooper McCauley testified that it was his opinion that the Defendant was operating a vehicle under the influence of alcohol or drugs and that his ability to operate the vehicle was impaired. Trooper McCauley then placed the Defendant under arrest. He also read to the Defendant the implied consent form, which was admitted as an exhibit. The implied consent form requested the Defendant's consent to submit to a blood alcohol test, and it explained the ramifications if the Defendant refused to submit to the test. Trooper McCauley read the implied consent form to the Defendant verbatim, and the Defendant appeared to understand the form. The Defendant, however, refused to consent to a blood alcohol test, and he signed the form indicating his refusal.

Lastly, Trooper McCauley testified that he was required to do an inventory search of the Defendant's truck prior to it being towed to ensure that no items of value were in the vehicle. After performing an inventory search of the Defendant's truck, Trooper McCauley testified that he found an envelope in the glove compartment that contained two white pills.

On cross-examination, Trooper McCauley stated that he did not find any alcohol in the Defendant's truck when he conducted the inventory search. He acknowledged that he also asked the Defendant several questions to determine whether he had his "wits about him" and that the Defendant answered those questions correctly. Trooper McCauley agreed that

it depends on when someone drinks alcohol in relation to when they drive as to how it affects their ability to drive. He further agreed that someone's weight and whether he or she has eaten anything also impacts how alcohol will affect his or her ability to drive.

With regard to the walk and turn field sobriety test, Trooper McCauley acknowledged that the National Highway Traffic Safety Administration ("NHTSA") guidelines consider a step to be heel-to-toe if the person's feet are within one-half inch of one another. Trooper McCauley agreed that the Defendant, in performing this test, took nine steps forward, made the proper turn, then took nine steps back. He also agreed that the Defendant correctly counted in numerical order while taking each set of nine steps. Defense counsel then asked Trooper McCauley whether he agreed that he also stepped off the line while demonstrating to the Defendant how to properly perform the walk and turn test. Trooper McCauley initially disagreed with defense counsel, stating, instead, "I believe my boots scuffed the ground." Defense counsel then asked Trooper McCauley whether he agreed that he "missed the heel to toe test," and Trooper McCauley responded, "I misstepped, but I didn't step off the line." Trooper McCauley also agreed that he was not "heel to toe in that test" as well. He added, "I'm not heel to toe, but the difference is[] . . . that I don't have an odor of an intoxicating beverage coming from my person. Okay. I'm demonstrating a task for [the Defendant]. I go back and demonstrate it again even after taking the misstep." Trooper McCauley then agreed that someone could "misstep, step off the line, . . . and not be impaired."

With regard to the one leg stand test, Trooper McCauley agreed that part of the test consisted of whether the Defendant maintained his position with his feet together and his arms to his side before he raised his leg off of the ground, whether he waited to lift his leg until he was told, and whether he began the test when he was told. Trooper McCauley further agreed that the Defendant completed all of these tasks successfully.

With regard to the finger to nose test, Trooper McCauley acknowledged that he did not indicate to the Defendant what is considered the tip of the nose. He stated, however, that typically he tells the person, "This is the tip of your finger, and this is the tip of your nose." Trooper McCauley could not explain why he failed to issue this instruction to the Defendant. He also acknowledged that the Defendant correctly followed his instructions to close his eyes and tilt his head back before touching his nose. Trooper McCauley agreed that part of the test consisted of his instructing the Defendant which hand to touch his nose with each time and that the Defendant followed those instructions correctly as well. He also agreed that the Defendant touched his nose every time but stated that he did not touch the "tip" of his nose as Trooper McCauley had instructed him.

Trooper McCauley acknowledged that he did not observe the Defendant drive because he arrived on the scene after the accident occurred. He also stated that he did not know how

the accident happened. Lastly, Trooper McCauley agreed that the Defendant told him that he only had been at Embers for half of an hour, but the Defendant did not indicate at what time he was there.

On redirect examination, Trooper McCauley stated that, when he demonstrated to the Defendant how to perform the walk and turn test, his eyes were focused on the Defendant. However, when an individual suspected of a DUI is performing the test, the individual is instructed to keep his or her eyes on his or her feet.

After Trooper McCauley's testimony, the State, outside the presence of the jury, indicated that it would be resting its proof. Accordingly, defense counsel moved for a judgment of acquittal on all four counts. The trial court granted the Defendant's motion for judgment of acquittal with respect to count two – possession of a legend drug without a prescription. The Defendant then told the trial court that he would be waiving his right to testify and would present no further proof. Defense counsel also renewed his motion for judgment of acquittal for the remaining three counts, and the trial court denied the motion.

During this jury-out proceeding, the State also requested that the trial court rule on the implied consent violation, stating that it was relevant to the jury charge and to whether the State could discuss the Defendant's refusal to submit to the blood alcohol test in its closing argument. Defense counsel agreed, stating that he believed that the trial court had to determine whether the Defendant violated the implied consent law before the trial court could issue the jury instruction regarding the Defendant's refusal to submit to the test.[3] The trial court declined to rule on the implied consent violation at that point.

When the jury returned, the State rested its proof. Defense counsel stated that the Defendant would not present any additional evidence. While the jury was deliberating, the trial court found that the Defendant "knowingly violated the implied consent law," and it entered an order suspending the Defendant's driver's license.

Following deliberations, the jury convicted the Defendant of DUI, reckless driving, and failure to maintain his lane of travel. The jury imposed a fine of $750.00 on the DUI conviction, $ 300.00 on the reckless driving conviction, and no fine on the failure to maintain his lane of travel conviction. At the sentencing hearing held immediately after the trial, the trial court sentenced the Defendant to eleven months, twenty-nine days on the DUI

---

[3] Defense counsel then stated, on the record, that, if the trial court made the determination that the Defendant violated the implied consent law and then issued the jury instruction regarding the Defendant's failure to submit to the test, "that's in effect the Court commenting on the evidence." Defense counsel stated that the jury instruction violated "the constitution where the Judge is commenting on the evidence indirectly."

conviction, suspended after service of ten days in jail,[4] and to six months on the reckless driving conviction, to be run concurrently to the DUI sentence. The trial court also imposed the fines set by the jury: $750.00 on the DUI conviction and $300.00 on the reckless driving conviction.

Thereafter, the Defendant filed a motion for a new trial which was denied by the trial court. The Defendant timely appealed, raising the following issues: the evidence is insufficient to support his convictions for DUI, reckless driving, and failure to maintain his lane of travel; and the trial court erred in giving the jury instruction regarding the Defendant's failure to submit to a blood alcohol test before ruling on whether the Defendant violated the implied consent law. The Defendant also contends that, if the trial court first rules that a defendant has violated the implied consent law and then gives the subsequent jury instruction regarding a defendant's failure to submit to a blood alcohol test, the trial court would be indirectly commenting on the evidence in violation of Article VI, Section 9 of the Tennessee Constitution.

## Analysis

### Sufficiency of the Evidence

The Defendant first challenges the sufficiency of the evidence supporting his convictions. Our Rules of Appellate Procedure provide that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest

---

[4] The trial court noted that the Defendant already had served two days. The trial court further stated that the Defendant could serve the remaining eight days in twenty-four-hour increments.

legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

*DUI*

The Defendant contends that the evidence is insufficient to support his DUI conviction. In support of this contention, the Defendant argues that the evidence did not establish that he was in physical control of a motor vehicle or driving a motor vehicle.

Our criminal code defines driving under the influence in pertinent part as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess[.]

Tenn. Code Ann. § 55-10-401 (Supp. 2010).

Therefore, as one of the elements necessary to convict the Defendant of a DUI, the jury had to determine that the Defendant either had been driving his truck or was in physical control of his truck while he was "[u]nder the influence of an[] intoxicant." See Tenn. Code Ann. § 55-11-401(a). Whether a defendant had been driving a motor vehicle or was in physical control of a motor vehicle is "highly factual," and "*all* circumstances should be taken into consideration by the trier of fact." State v. Butler, 108 S.W.3d 845, 850 (Tenn. 2003). In determining whether a defendant was in physical control of a vehicle within the meaning of Tennessee Code Annotated section 55-10-401, our supreme court adopted a totality of the circumstances test. State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1995). Our supreme court also provided a nonexhaustive list of factors to consider relevant to that determination: (1) "the location of the defendant in relation to the vehicle"; (2) "the whereabouts of the ignition key"; (3) "whether the motor was running"; (4) "the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle"; and (5) "the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise."[5] Id. at 765; see also Butler, 108 S.W.3d at 850. These considerations also can "be used as circumstantial evidence that the defendant had been *driving* the vehicle." Butler, 108 S.W.3d at 850 (citing Lawrence, 849 S.W.2d at 765).

Here, the testimony of Trooper McCauley established that the Defendant was the only person present, other than an off-duty deputy, when Trooper McCauley arrived on the scene of the accident. Although the Defendant points out that no evidence was admitted with respect to the remaining factors listed above, this fact is not determinative. All circumstances should be taken into account, and the factors provided in Lawrence are a nonexhaustive list. Lawrence, 849 S.W.2d at 765. The record demonstrates that Trooper McCauley was called to respond to a "traffic crash on U.S. 43 near Industrial Park Road." When he arrived, the Defendant's truck was located "on the shoulder partially in the roadway," the Defendant was the only person present at the scene upon Trooper McCauley's arrival other than the off-duty deputy, and the Defendant told Trooper McCauley that "he was coming from Embers in Spring Hill." This circumstantial evidence is sufficient to permit the inference that the Defendant had been driving the truck. As stated in Dorantes, "direct and circumstantial

---

[5] In 2003, the supreme court in Butler refined the fifth Lawrence factor – the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise. Butler, 108 S.W.3d at 851. The court "adopt[ed] the reasonably capable of being rendered operable standard in cases where[in] a defendant contests the element of physical control based upon alleged inoperability of the vehicle." Id. at 852.

evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. Thus, the Defendant is entitled to no relief on this issue.[6]

*Reckless Driving*

The Defendant also contends that the evidence is insufficient to support his reckless driving conviction. In support of this contention, the Defendant contends that no evidence was introduced at trial about the Defendant's driving, whether any people were around the Defendant's vehicle when the accident happened, or whether there was any damage to property. Before an accused can be convicted of reckless driving in the context of this case, the State must prove beyond a reasonable doubt that the Defendant (a) drove a motor vehicle and (b) did so in a "willful or wonton disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205 (2008). "Willful and wanton disregard for another's safety is a factual question properly determined from all the circumstances." State v. Sean Higgins, No. W2010-00779-CCA-R3-CD, 2012 WL 1494640, at *4 (Tenn. Crim. App. April 30, 2012), perm. app. denied (Tenn. Sept. 18, 2012) (citing State v. Wilkins, 654 S.W.2d 678, 680 (Tenn. 1983)). "It exceeds negligence in that the actor willfully breaches a duty." Wilkins, 654 S.W.2d at 680.

We previously concluded that a jury could find that the Defendant drove the truck. Thus, we only must determine whether the evidence is sufficient to establish that the Defendant drove his truck with a "willful or wonton disregard for the safety of persons or property." See Tenn. Code Ann. § 55-10-205. The only evidence introduced during the trial with respect to this requirement was that the Defendant's truck was positioned "on the shoulder partially in the roadway" when Trooper McCauley arrived on the scene and that Trooper McCauley observed a dent in the guardrail. The State did not introduce any evidence from which the jury could even circumstantially infer the Defendant's state of mind. Furthermore, no evidence was introduced from which the jury could reasonably infer that the Defendant operated his vehicle in a "willful or wonton" manner, as opposed to a negligent manner. See Tenn. Code Ann. § 55-10-205.

Accordingly, the evidence is insufficient to sustain the Defendant's reckless driving conviction because the proof failed to establish beyond a reasonable doubt a "*willful or wonton* disregard for the safety of persons or property." Tenn. Code Ann. § 55-10-205 (emphasis added). Thus, we reverse and dismiss the Defendant's reckless driving conviction.

---

[6] The Defendant only raised this one element of the DUI offense in the sufficiency argument in his brief. Therefore, we need not address the sufficiency of the evidence as to the other elements of this offense.

Finally, the Defendant argues that the evidence is insufficient to support the failure to maintain his lane of travel conviction because no testimony was introduced about the Defendant's driving. Our statute defines failure to maintain lane of travel as follows:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic. . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]

Tenn. Code Ann. § 55-8-123(1) (2008).[7] When Trooper McCauley arrived at the scene, the Defendant's truck was positioned "on the shoulder partially in the roadway." Specifically, the tailgate of the Defendant's truck was positioned close to the guardrail on the right side of the roadway, and the front-end of the truck was positioned in the right lane of the roadway. The truck also was angled towards the direction of oncoming traffic, and there was a dent in the guardrail. From this evidence, it was reasonable for the jury to infer that the Defendant's truck would not have been positioned in such as manner without having violated Tennessee Code Annotated section 55-8-123(1). Accordingly, the evidence is sufficient to sustain this conviction.

## Jury Instruction

The Defendant contends that the trial court erred in instructing the jury regarding the Defendant's failure to submit to a blood alcohol test before it ruled on whether the Defendant had violated the implied consent law. On the other hand, the Defendant contends that, if the trial court first rules that a defendant has violated the implied consent law and then gives the jury instruction regarding a defendant's failure to consent to a blood alcohol test, the trial court "is indirectly commenting on the evidence in violation of Article VI, Section 9 of the Tennessee Constitution." We conclude that both issues are without merit.

In addition to instructing the jury on the elements of a DUI, the trial court issued the following pattern jury instruction regarding the Defendant's refusal to submit to a blood alcohol test:

> If you find from the proof that the [D]efendant was offered and refused to submit to a test for the purpose of determining the alcohol or drug content

---

[7] Significantly, in contrast to the offense of reckless driving, there is no requirement in this offense that the Defendant must have acted in a willful or wanton manner.

of his blood and that the law enforcement officer advised the [D]efendant that refusal to submit to such a test will result in suspension of his operator's license, then such refusal is not sufficient standing alone and by itself to establish the guilt of the [D]efendant, but it is a fact which, if proved, may be considered by you in light of all other proved facts in deciding whether the [D]efendant is guilty or not guilty. The weight to which such a circumstance is entitled and whether or not such conduce shows a consciousness of guilty are matters for your determination.

Initially, we note that a violation of the implied consent law is generally civil in nature, as in this case. See Tenn. Code Ann. § 55-10-406(a) (providing that a person who violates the implied consent law "shall not be considered as having committed a criminal offense"). Accordingly, whether a defendant's refusal to submit to a blood alcohol test is admissible in his or her criminal DUI trial is entirely a separate issue than the determination of whether a defendant violated the implied consent law. See, e.g., State v. Collins, 166 S.W.3d 721, 728 (Tenn. 2005) ("The provisions for advising a driver of the consequences of refusing a drug or alcohol test only apply to the State's ability to seek the civil penalty of license suspension . . . . The issue of whether [a defendant's] refusal to take the test is admissible in his criminal DUI trial is entirely separate.").

Moreover, in this case, the trial court's jury instruction regarding the Defendant's refusal to submit to a blood alcohol test mirrored the Tennessee pattern jury instruction. See T.P.I. 38.04. It is a well-settled proposition of law that refusal to submit to a blood or chemical test is admissible as probative evidence on the issue of guilt for DUI offenses. See, e.g., State v. Morgan, 692 S.W.2d 428, 430 (Tenn. Crim. App. 1985); State v. Wright, 691 S.W.2d 564, 566 (Tenn. Crim. App. 1984); State v. Smith, 681 S.W.2d 569, 570 (Tenn. Crim. App. 1984); State v. Horace Oscar Wakefield, No. M2009-01828-CCA-R3CD, 2012 WL 214722, at *6 (Tenn. Crim. App. Jan. 24, 2012). Accordingly, "when there is evidence that a defendant has refused to submit to a blood alcohol test after being advised of the consequences of a refusal, the trial court should instruct the jury that it may consider the refusal as probative of guilt." State v. Bobby J. Young, No. M1998-00402-CCA-R3-CD, 1999 WL 1179574, at *4 (Tenn. Crim. App. Dec. 15, 1999), perm. app. denied (Tenn. July 17, 2000); see also State v. Leroy Nevils, No. M2003-00520-CCA-R3-CD, 2004 WL 367729, at *5 (Tenn. Crim. App. Feb. 26, 2004). Thus, the trial court did not err in instructing the jury on this issue.

Lastly, the Defendant contends that, if the trial court first rules that a defendant has violated the implied consent law and then gives the jury instruction regarding a defendant's failure to consent to a blood alcohol test, the trial court is indirectly commenting on the evidence in violation of Article VI, Section 9 of the Tennessee Constitution. Preliminarily,

we note that the factual prerequisite to this issue did not occur in this case. Therefore, this issue, as presented by the Defendant, presents merely a hypothetical issue. Accordingly, we decline to address the Defendant's constitutionality argument because this Court does not render advisory opinions. See, e.g., State v. Rodgers, 235 S.W.3d 92, 97 (Tenn. 2007) ("Courts may not issue advisory rulings."); State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985) ("An appellate court will not pass on lawsuits when there is no justiciable controversy presented, or render advisory opinions on questions which are premature and contingent and may never arise in the future."). Thus, the Defendant is not entitled to relief on this issue.[8]

## CONCLUSION

For the reasons articulated above, we affirm the Defendant's DUI and failure to maintain his lane of travel convictions. We, however, reverse and dismiss the Defendant's conviction for reckless driving.

_____
JEFFREY S. BIVINS, JUDGE

---

[8] We also note that the Defendant cited no case law in his brief in support of this novel argument.