IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
June 6, 2007 Session at Nashville

## STATE OF TENNESSEE v. TINO VERNELL RODGERS (A MINOR)

**Appeal by permission from the Court of Appeals, Western Section**
**Circuit Court for Gibson County**
**No. 16948     Clayburn Peeples, Judge**

---

**No. W2005-00632-SC-R11-CV - Filed on August 17, 2007**

---

We granted review to answer two questions:  (1) whether the trial court erred by dismissing a petition for post-commitment relief from a probation violation in juvenile court; and (2) whether the Court of Appeals erred by dismissing the appeal as moot because the Petitioner had reached the age of nineteen.  Because an oral directive by the juvenile court placing a minor under house arrest is not a valid court order, the trial court erred by dismissing the petition for post-commitment relief.  Because a probation violation in juvenile court may have adverse consequences after the completion of a term of commitment, the doctrine of mootness does not apply.  The judgment of the Court of Appeals is reversed, and the order of juvenile commitment is set aside.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

GARY R. WADE, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and CORNELIA A. CLARK, JJ., joined.

Roger Stanfield, Jackson, Tennessee, for the appellant, Tino Vernell Rodgers.

Robert E. Cooper, Attorney General and Reporter; Michael E. Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; Gary Brown, District Attorney General; and Larry Hardister, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On March 2, 2004, the Petitioner, Tino V. Rodgers, entered a plea of guilty to a charge of assault in the Juvenile Court of Gibson County.  Rodgers, who was born on May 9, 1987, was sixteen years of age at the time of the plea.  The juvenile court entered an order finding the Petitioner to be a delinquent child and committed him to the custody of the Tennessee Department of Children's Services ("DCS") but suspended the commitment contingent upon compliance with the terms of probation.  The probationary rules required the Petitioner to obey all laws, meet with his

probation officer, comply with curfews of 9:00 p.m. on weekdays and 10:00 p.m. on weekends, refrain from possessing alcohol or drugs, attend school every day, and avoid contact with gang members or anyone serving a probationary sentence.

Two and one-half months after the plea, the Petitioner appeared before the juvenile court on new charges: theft of property and possession of marijuana and cocaine. The juvenile court made a ruling from the bench, placing the Petitioner under house arrest pending the disposition of the new charges. The juvenile court did not, however, enter a written order either imposing house arrest or amending the original probationary terms.

Days later, yet another action was filed in the juvenile court, this time charging the Petitioner with leaving his residence in violation of the oral directive of house arrest. The petition did not otherwise contain any allegations of a probation violation based upon either the theft or illegal drug charges. On the following day, the juvenile court entered an order finding that the Petitioner had, in fact, violated his probation by leaving his residence, and he was committed to the Wilder Youth Development Center. The juvenile court also entered an order finding the Petitioner delinquent for the theft. The charges of possession of marijuana and cocaine were retired without any disposition.

Afterward, the Petitioner filed a petition in the Circuit Court of Gibson County seeking release pursuant to the Juvenile Post-Commitment Procedures Act. Counsel was appointed. At the conclusion of a hearing on the petition, the trial court denied relief, finding that the juvenile court had "verbally ordered [the Petitioner], in open court, [to] be placed on house arrest pending trial on later charges." The trial court determined that the Petitioner "heard the order [and] knew that he was verbally ordered to be on house arrest" and held that the juvenile court's oral directive "operated as an amendment to . . . [the] rules of probation."

On direct appeal, the State conceded that the trial court had erred by denying post-commitment relief. Nevertheless, the Court of Appeals ruled that the appeal had become moot because the Petitioner had reached nineteen years of age[1] prior to the release of its opinion, and, in consequence, had been released from custody. The Court of Appeals concluded that it lacked the authority to grant relief "as [the Petitioner] no longer can be incarcerated for the delinquent acts he committed as a juvenile."

## ANALYSIS

### Juvenile Proceedings

The Tennessee General Assembly has enacted extensive legislation governing juvenile courts and proceedings. See Tenn. Code Ann. §§ 37-1-101 to 37-11-103 (2005). A primary purpose is to remove "the taint of criminality and the consequences of criminal behavior" for juveniles who

---

[1]His nineteenth birthday was May 9, 2006.

commit delinquent acts "and substitute therefor a program of treatment, training and rehabilitation." Tenn. Code Ann. § 37-1-101(a)(2) (2005). Another purpose of the legislation is to "[p]rovide a simple judicial procedure through which this part is executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." Tenn. Code Ann. § 37-1-101(a)(4) (2005).

The statutes define an adult as "any person eighteen (18) years of age or older" and a "child" as "[a] person under eighteen (18) years of age." Tenn. Code Ann. § 37-1-102(b)(3) to (4)(A) (2005). The definition of a child may also include "[a] person under nineteen (19) years of age" under the following circumstances:

(i) Remaining under the continuing jurisdiction of the juvenile court to enforce a non-custodial order of disposition entered prior to the person's eighteenth birthday; or

(ii) Remaining under the jurisdiction of the juvenile court for the purpose of being committed, or completing commitment including completion of home placement supervision, to the department of children's services with such commitment based on an adjudication of delinquency for an offense that occurred prior to the person's eighteenth birthday; or

(iii) Remaining under the jurisdiction of the juvenile court for resolution of delinquent offense or offenses committed prior to a person's eighteenth birthday but considered by the juvenile court after a person's eighteenth birthday with the court having the option of retaining jurisdiction for adjudication and disposition or transferring the person to criminal court under § 37-1-134[.]

Tenn. Code Ann. § 37-1-102(4)(B) (2005). A "delinquent act" is one that is designated as a crime under the law. Tenn. Code Ann. § 37-1-102(9) (2005). A "delinquent child" is "a child who has committed a delinquent act and is in need of treatment or rehabilitation." Tenn. Code Ann. § 37-1-102(10) (2005).

When a child is charged with a delinquent act or unruly conduct by petition, the juvenile court must conduct a hearing in order to determine whether there is a need for rehabilitation or treatment. The child is afforded a number of constitutional and statutory rights and procedures in delinquency proceedings. See Tenn. Code Ann. §§ 37-1-120, -124 (2005). These include the right to due process, the right to counsel, the right to introduce evidence, the right to cross-examine witnesses, and the privilege against self-incrimination. Tenn. Code Ann. §§ 37-1-126, -127 (2005).

Tennessee Code Annotated section 37-1-129 provides, in pertinent part, as follows:

If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which the child is alleged to be delinquent, it shall proceed

immediately or at a postponed hearing to hear evidence as to whether the child is in need of treatment or rehabilitation . . . .

Tenn. Code Ann. § 37-1-129(b) (2005). The statutes further provide treatment, rehabilitation, and commitment options available to the juvenile court in disposing of a delinquency petition. See Tenn. Code Ann. § 37-1-131(a) (2005). Again, the juvenile court's authority extends only to those who meet the definition of "child" under the applicable statutory provisions. See Tenn. Code Ann. §§ 37-1-102(b)(3), (4)(A), (B) (2005).[2]

### Juvenile Post-Commitment Procedures Act

With this procedural background in mind, we now address the propriety of the verbal directive by the juvenile court placing the Petitioner under house arrest as a condition of his release. The State concedes error on the merits of the issue.

The Juvenile Post-Commitment Procedures Act ("the Act") was enacted by the General Assembly in 1978. See Tenn. Code Ann. §§ 37-1-301 to -322 (2005). The Act provides similar protections to juveniles as are provided to adult petitioners under the Post-Conviction Procedures Act. See Tenn. Code Ann. §§ 40-30-101 to -313. (2006). Under the Act, "[a] juvenile in the custody of the department of children's services pursuant to a commitment by a juvenile court of this state may petition for post-commitment relief." Tenn. Code Ann. § 37-1-302 (2005). A petitioner is entitled to relief "when [his or her] commitment is void or voidable because of the abridgement in any way of any right guaranteed by the laws or constitution of this state, or the Constitution of the United States." Tenn. Code Ann. § 37-1-305 (2005). This includes "a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right." Id. "If the court finds that there was such a denial or infringement of the constitutional or statutory rights of the juvenile so as to render the commitment void or voidable, the court shall vacate and set aside the judgment . . . ." Tenn. Code Ann. § 37-1-317(a) (2005).

The Appendix to the Tennessee Rules of Juvenile Procedure incorporates the requirements for a "valid court order" in section 31.303(f)(3) of Title 28 of the Code of Federal Regulations. Section 31.303(f)(3) provides that:

For the purpose of determining whether a valid court order exists and a juvenile has been found to be in violation of that valid order all of the following conditions must be present prior to secure incarceration:

(i) The juvenile must have been brought into a court of competent jurisdiction and made subject to an order issued pursuant to proper

---

[2]This discussion is limited to the treatment of juveniles who are not transferred from juvenile court for trial as adults. See Tenn. Code Ann. § 37-1-134 (2005).

authority. The order must be one which regulates future conduct of the juvenile. Prior to issuance of the order, the juvenile must have received the full due process rights guaranteed by the Constitution of the United States.

(ii) The court must have entered a judgment and/or remedy in accord with established legal principles based on the facts after a hearing which observes proper procedures.

(iii) The juvenile in question must have received adequate and fair warning of the consequences of violation of the order at the time it was issued and <u>such warning must be provided to the juvenile and to the juvenile's attorney and/or to legal guardian in writing and be reflected in the court record and proceedings</u>.

Tenn. R. Juv. P. Appendix (2007) (quoting 28 C.F.R. § 31.303(f)(3)(i)-(iii) (2005) (emphasis added)). Similarly, the statutory code defines a "valid court order" as "one that is authorized by law." Tenn. Code Ann. § 37-1-102(b)(6) (2005).

Here, the juvenile court's oral directive regarding house arrest did not satisfy these requirements. Because the verbal order of "house arrest" was never reduced to writing yet served as the single basis for the probation violation, the commitment to the Department of Children's Services was invalid. A juvenile must receive adequate and fair warning, in writing, of the consequences of violating an order of the court. Tenn. R. Juv. P. Appendix; <u>see</u> 28 C.F.R. § 31.303(f)(3)(iii) (2005).

The statutory requirements for the entry of a valid court order are mandatory. <u>See</u> 13 Am. Jur. 2d <u>Statutes</u> § 13 (2007). The juvenile court "<u>must</u> have entered a judgment and/or remedy in accord with established legal principles based on the facts after a hearing which observes proper procedures." 28 C.F.R. § 31.303(f)(3)(ii) (emphasis added). The juvenile "<u>must</u> have received adequate and fair warning of the consequences of violation of the order at the time it was issued and such warning <u>must</u> be provided to the juvenile . . . in writing and be reflected in the court record and proceedings." <u>Id.</u> § 31.303(f)(3)(iii) (emphasis added). These provisions provide no authority for the substitution of an oral directive for a valid court order. <u>See</u> Tenn. Code Ann. § 37-1-102(b)(6) (2005).

A juvenile is entitled to post-commitment relief when an order of commitment is "void or voidable because of the abridgement in any way of any right guaranteed by the laws or constitution of this state . . . ." Tenn. Code Ann. § 37-1-305 (2005). While the requirement of a written order is statutorily based, the entitlement to adequate and fair notice is also a hallmark of the law of the land and due process clauses of the Tennessee and United States Constitutions. U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8; <u>see also</u> <u>State v. Pickett</u>, 211 S.W.3d 696, 702 (Tenn. 2007). In

short, the Petitioner qualifies for relief on statutory grounds under the Juvenile Post-Commitment Procedures Act. Tenn. Code Ann. § 37-1-317(a) (2005).

## Mootness of Appeal

Because the Petitioner reached the age of nineteen and, therefore, was entitled to release from the order of commitment before the disposition by the Court of Appeals, the State contends that the mootness doctrine precludes our review. We disagree.

The mootness doctrine provides that before the jurisdiction of the courts may be invoked, "a genuine and existing controversy, calling for present adjudication" of the rights of the parties must exist. State ex rel. Lewis v. State, 347 S.W.2d 47, 48 (Tenn. 1961) (quoting S. Pac. Co. v. Eshelman, 227 F. 928, 932 (N.D. Cal. 1914)). Courts may not issue advisory rulings. See Super Flea Mkt. of Chattanooga, Inc. v. Olsen, 677 S.W.2d 449, 451 (Tenn. 1984). "However convenient or desirable for either party that the questions mooted in the case be authoritatively settled for future guidance, the court is not justified in violating fundamental principles of judicial procedure to gratify that desire." State ex rel. Lewis, 347 S.W.2d at 48 (quoting S. Pac. Co., 227 F. at 932).

There are exceptions to the rule. A court may review the merits of an appeal when the appeal involves issues of great importance to the public and to the administration of justice, or when the appeal involves issues capable of repetition yet evading review. See Dockery v. Dockery, 559 S.W.2d 952, 954-55 (Tenn. Ct. App. 1977). With regard to the former exception, this Court has emphasized that the issue must be "one of great public importance, as where it involves a determination of public rights or interests under conditions which may be repeated at any time." McCanless v. Klein, 188 S.W.2d 745, 747 (Tenn. 1945) (quoting 1 C.J.S. Actions § 17). With regard to the latter, there must be a reasonable expectation that the acts provoking the litigation will reoccur, that judicial remedies may not be effective if the acts do reoccur, and that the same party will be prejudiced. See State v. Montgomery, 929 S.W.2d 409, 414 (Tenn. Crim. App. 1996).

In this case, the Court of Appeals concluded that "[u]pon reaching this milestone, [the Petitioner] no longer face[d] the risk of future incarceration for his juvenile offenses." See Tenn. Code Ann. § 37-1-103(c) (2005) (noting that the jurisdiction of the juvenile court continues until the age of eighteen or, under limited circumstances, the age of nineteen). The Court of Appeals also found that no exception to the mootness doctrine was applicable:

> Counsel for [the Petitioner] asserted at oral argument that, based upon his personal experience, this issue arises frequently in juvenile cases across the state. Yet, he conceded that he could provide no statistical or other data to support his claim. The record before this Court does not establish the frequency with which the juvenile courts fail to conform their orders to the rule set forth in the Appendix to the Tennessee Rules of Juvenile Procedure. "Thus, we have no way to determine

whether the issues in this case are of great importance to the administration of justice
or whether cases like this will occur again and evade effective judicial review."

(quoting McIntyre v. Traughber, 884 S.W.2d 134, 138 (Tenn. Ct. App. 1977)).

By focusing on the age of the Petitioner and the related statutory provisions regarding jurisdiction, the Court of Appeals overlooked that a probation violation entered in juvenile court may have a subsequent adverse effect. For example, a prior probation violation in juvenile court may be considered as a sentence enhancement factor for an adult upon a subsequent conviction. See Tenn. Code Ann. § 40-35-114(8) (2006). Our holding in State v. Jackson, 60 S.W.3d 738, 743-44 (Tenn. 2001), illustrates that point:

> [W]e hold today that section 40-35-114[16] is not the exclusive means for using juvenile court records to enhance sentences in subsequent adult criminal proceedings. Because probation violations are not "delinquent acts" as that term is defined by our legislature, factor (20) does not prevent these violations from being considered under other enhancement factors. . . . Moreover, because measures less restrictive than confinement have failed, the application of [section 40-35-114(8)] is also proper.

Id. (emphasis added). In our view, this appeal presents a "genuine and existing controversy, calling for present adjudication." See State ex rel. Lewis, 347 S.W.2d at 48. It follows that there is no need to consider the applicability of any exceptions to the mootness doctrine.

There are two collateral issues worthy of comment. First, the Court of Appeals determined the Petitioner's age and custodial status during oral argument. The appropriate avenue for the determination of post-judgment facts is contained in Rule 14 of the Tennessee Rules of Appellate Procedure: "If a motion to consider post-judgment facts is granted or the appellate court acts on its own motion, the court, by appropriate order, shall direct that the facts be presented in such manner and pursuant to such reasonable notice and opportunity to be heard as it deems fair." Tenn. R. App. P. 14(c) (emphasis added); see also Tenn. R. App. P. 14(a) (identifying mootness as one of the grounds for consideration). Second, the Court of Appeals faulted the Petitioner for causing additional delay by failing to seek an accelerated review of the juvenile court's ruling in the circuit court. See Tenn. Code Ann. § 37-1-159(a) (2005).[3] The Petitioner instead filed a petition under the Juvenile Post-Commitment Procedures Act and then appealed the circuit court's judgment under Tennessee Code Annotated section 37-1-302 (2005). Section 37-1-302 allows a juvenile to seek the protections afforded under the Act even after the time for an appeal under section 37-1-159 has

---

[3]This statute provides in part that "[t]he juvenile court shall be a court of record; and any appeal from any final order or judgment in a delinquency proceeding, filed under this chapter, . . . may be made to the criminal court or court having criminal jurisdiction that shall hear the testimony of witnesses and try the case de novo." Tenn. Code Ann. § 37-1-159(a) (2005). In addition, the appeal "shall be perfected within ten (10) days, excluding nonjudicial days, following the juvenile court's disposition." Id.

expired. The notice of appeal was filed more than one year before his nineteenth birthday and his appellate brief was served within five months of the notice. The State filed several requests for extensions before filing its briefs. Oral argument was postponed from February until April of 2006. The opinion of the Court of Appeals was released only fourteen days after the Petitioner had reached the age of nineteen. Under these circumstances, the Petitioner cannot be assigned any blame for choosing to seek relief under the Juvenile Post-Commitment Procedures Act.

## CONCLUSION

Because the juvenile court's oral directive placing the Petitioner under house arrest was not a valid court order, the trial court erred in denying post-commitment relief. The appeal is not moot because a probation violation in juvenile court may have an adverse effect in the future. The Court of Appeals' judgment is reversed, and the order of commitment is set aside. Costs are taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE