IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 29, 2015 Session

## IN RE: ADDISON M.

**Direct Appeal from the Criminal Court for Knox County**
**No. 103858     G. Scott Green, Judge**

---

**No. E2014-02489-COA-R3-JV-FILED-NOVEMBER 9, 2015**

---

This appeal arises out of juvenile delinquency proceedings in Knox County Juvenile Court. Due to numerous deficiencies in the proceedings below, we vacate the delinquency adjudication and remand for dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Vacated and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Mark E. Stephens, District Public Defender, and Christina M. Kleiser, Assistant Public Defender, for the appellant, Addison H. M.

Herbert H. Slatery, III, Attorney General and Reporter, and John H. Bledsoe, Senior Counsel, for the appellee, State of Tennessee.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

In November 2009, a department store filed a petition in the Knox County Juvenile Court alleging that Addison M. ("Addison") was a delinquent child in need of treatment and rehabilitation. According to the petition, Addison took merchandise valued at $88 from the store in October 2009 and thereby committed the offense of theft of property under $500. Addison was twelve years old at the time. The public defender was appointed as counsel for Addison in December 2009.

Unfortunately, the record before us does not conclusively establish the manner in which the delinquency petition was adjudicated or resolved, and this uncertainty has led

to the present appeal. The preprinted section of the petition entitled "ORDER" was left blank. The face of the petition contains approximately four handwritten words and someone's initials, but they are all illegible. Although it is not reflected in the record, both Addison and the State agree that Addison "pled true" to the contents of the petition at a hearing in January 2010. The record does not contain any written order adjudicating Addison delinquent, but it does contain a "Knox County Juvenile Court Plan of Probation" for Addison, dated February 26, 2010. It was signed by Addison, her mother, her probation officer, and someone designated as the "Judge/Magistrate/Hearing Officer." The Plan of Probation states, in relevant part:

> You have been placed on probation, and you are now under the direct supervision of the Court. You are expected to obey all laws of the city, county, state and federal governments, and as long as you are on probation, you are subject to the lawful commands of all adults in a position of authority over you. . . .
>
> . . . .
>
> Probation is a program whereby you cooperate and work with your Probation Officer to develop the self-discipline necessary to remain out of trouble in the future and work to resolve the personal problems which may have contributed to your being placed on probation.
>
> Failure to comply with your probation indicates to the Court that you cannot make progress in the community and could lead to your being placed in confinement.

The Plan of Probation required Addison to complete sixteen hours of community service, submit to random drug testing, refrain from carrying weapons, avoid alcohol and drugs, attend school, obey curfew, meet with her probation counselor, and avoid the property of the petitioning department store. Notably, the Plan of Probation stated, "All court imposed requirements must be met before you[] are released from probation," and "YOU WILL REMAIN ON PROBATION UNTIL RELEASED BY THE COURT." Addison claims that she completed the terms of her probation and was released from probation later that year, but the record does not contain any order to that effect.

Over the next few years, several more petitions were filed against Addison alleging that she was unruly or delinquent for committing various offenses, including criminal trespass, disorderly conduct, violation of curfew, running away, driving on a suspended license, possession of a controlled substance, and violation of the financial responsibility law. Some of these petitions were dismissed, but others apparently went

unresolved, as the petitions contain some illegible handwritten notations, but the "ORDER" sections were left blank. On September 9, 2013, the juvenile court entered an order addressing one particular petition. In that order, the juvenile court magistrate found beyond a reasonable doubt that Addison was in need of treatment and rehabilitation for committing the traffic offense of driving on a suspended license.[1] Accordingly, the juvenile court entered a new Plan of Probation for Addison.

Addison admits that she struggled to comply with the terms of this probation plan, and during several "report backs" in juvenile court, her probation officer reported that she failed drug screens. The record contains a "Detention Hearing Order" from December 2, 2013, in which the juvenile court ordered that "[t]he child shall remain in secure detention pending the adjudication of this matter." However, the "delinquent petition" number referenced in the order does not match the petition number on any of the delinquent petitions in the record, so it is not clear what circumstances led to the entry of this order.

The next order in the record is dated June 19, 2014. It states:

> This cause came before the Knox County Juvenile Court on the 19th day of June, 2014 before the Honorable J. Dirk Weddington, Magistrate of the Juvenile Court for Knox County, Tennessee regarding the within petition, and the parties named therein being before the Court and all parties entitled to notice of this hearing having been duly notified thereof as required by law, and the Court having received the evidence and testimony and being fully advised in the premises, finds that said child is beyond a reasonable doubt a delinquent child in need of treatment and rehabilitation in that said child has committed the delinquent act of T.C.A. 39-14-103 Theft of Property, Value $500 or Less, and prior Judicial Diversion is hereby revoked, and it is in the best interest of said child and the public as follows:
>
> It is, Therefore, ORDERED, ADJUDGED AND DECREED:
> ADDISON [M.], is found to be guilty of the delinquent act referenced above and is declared a delinquent child in need of treatment and rehabilitation. It is therefore Ordered that said child is to be placed on probation and will comply with the provisions of probation as set forth in the Court's Plan of Probation and Rehabilitation which has been approved in this cause and is on file and is hereby incorporated by reference as if set forth fully herein.

---

[1] The record does not reflect when or why Addison's license was suspended.

It is further Ordered that this Court shall retain jurisdiction of said child until the Age of Nineteen (19).

According to Addison, the June 19, 2014 hearing that precipitated this order was supposed to be another "report back" on her traffic offense probation, and she had no notice that the magistrate would revisit her 2009 theft charge. Addison claims that she had already completed the terms of her probation for the theft charge, and she was never advised that she was placed on judicial diversion in connection with that charge. Thus, she claims that there was no "prior Judicial Diversion" for the magistrate to revoke, and the magistrate was not authorized to enter a second Plan of Probation on the 2009 petition.

Addison filed a request for rehearing before the juvenile court judge, arguing that her due process rights were violated when the magistrate purportedly revoked judicial diversion on a four-year-old charge without adequate notice to her and in the absence of any written order placing her on judicial diversion in the first place. On July 2, 2014, the juvenile court judge entered an order confirming the magistrate's order in its entirety. After "considering the entire record," the juvenile court judge concluded that a full hearing would be "a redundant step since an Appeal can be taken from the Decree to Criminal Court for another de novo hearing." Accordingly, the juvenile court concluded that "the interest of the parties and due process would best be served by proceeding directly to a de novo hearing before the Criminal Court." The juvenile court ordered the clerk to transmit the record to criminal court for a trial de novo.

Before the criminal court, the District Attorney's office filed a response to Addison's appeal, on behalf of the State of Tennessee. The State conceded that there is no statutory authorization for judicial diversion in juvenile court. However, the State suggested that "[t]he diversion that is referred to in Knox County Juvenile Court is a Judge or Referee made [a] decision to withhold the exercise of jurisdiction, after a plea of guilty, in order for the juvenile to establish that he or she is not in need of treatment or rehabilitation." According to the State, when this occurs, the juvenile is typically told "that his or her case is 'passed indefinitely' until the juvenile is eighteen years of age," but no order is entered to that effect. As a result, the State argued that it was appropriate for the juvenile court to convict and sentence Addison on the unresolved charge four years later. The State asserted that this action did not constitute a true "revocation" of diversion, and therefore Addison was not entitled to notice or a revocation hearing. The State argued that Addison was "not originally on official probation" either, due to the fact that her case was "passed indefinitely." In response to these arguments, Addison maintained that her due process rights were violated when she was sentenced to probation twice for the same offense, she was never given written notice that she was placed on

4

judicial diversion, and even if she had been placed on diversion, she was not given notice of the possibility of its revocation or a proper revocation hearing.

After a brief hearing in criminal court, the criminal court entered an order that "affirmed" the orders of the juvenile court judge and juvenile court magistrate in their entirety. The criminal court reasoned that because the record did not contain any disposition of the original delinquency petition, there was no order precluding the entry of the magistrate's June 19, 2014 order on the petition.[2] Addison timely filed a notice of appeal to this Court.

## II. ISSUE PRESENTED

Addison presents the following issue, which we have slightly reworded, for review on appeal: Whether the juvenile court erred when it entered a second disposition on a delinquent petition from four years earlier, where the child had completed the terms of her probation, as the court violated her due process rights, her right to notice under *State v. Rodgers*, and her protections against double jeopardy. For the following reasons, we vacate the decision of the criminal court and remand for dismissal of the petition.

## III. DISCUSSION

"The Tennessee General Assembly has enacted extensive legislation governing juvenile courts and proceedings." *State v. Rodgers*, 235 S.W.3d 92, 94 (Tenn. 2007) (citing Tenn. Code Ann. §§ 37-1-101 to 37-11-103). A primary purpose of this legislation was "to remove 'the taint of criminality and the consequences of criminal behavior' for juveniles who commit delinquent acts 'and substitute therefor a program of treatment, training and rehabilitation.'" *Id.* (quoting Tenn. Code Ann. § 37-1-101(a)(2)). It was also designed to provide "'a simple judicial procedure'" for executing and enforcing the legislation, which would assure the parties a fair hearing and recognize their constitutional and other legal rights. *Id.* (quoting Tenn. Code Ann. § 37-1-101(a)(4)).

---

[2]Tennessee Code Annotated section 37-1-159(a) provides that "any appeal from any final order or judgment in a delinquency proceeding, filed under this chapter, except a proceeding pursuant to § 37-1-134, may be made to the criminal court or court having criminal jurisdiction that shall hear the testimony of witnesses and try the case de novo." The hearing before the criminal court in this case was extremely limited, as the criminal court only heard argument from counsel and extremely brief testimony from a juvenile court official who testified about the records maintained in the juvenile court's computer system and her understanding of the juvenile court's ruling in Addison's case. The criminal court's analysis was comparable to that of an appellate court, not a trial court trying a delinquency case de novo. Nevertheless, on appeal, the parties do not challenge the propriety of the proceedings in criminal court. Despite the inadequacies we may perceive in the criminal court proceedings, we will review the final orders of the criminal court and the juvenile court on appeal.

The juvenile court has "exclusive original jurisdiction" of proceedings in which a child is alleged to be delinquent. Tenn. Code Ann. § 37-1-103(a)(1). "A 'delinquent child' is 'a child who has committed a delinquent act and is in need of treatment or rehabilitation.'" *Rodgers*, 235 S.W.3d at 95 (quoting Tenn. Code Ann. § 37-1-102(10)). "A 'delinquent act' is one that is designated as a crime under the law." *Id.* (quoting Tenn. Code Ann. § 37-1-102(9)).

"The child is afforded a number of constitutional and statutory rights and procedures in delinquency proceedings," including the right to due process. *Id.* (citing Tenn. Code Ann. §§ 37-1-120, -124, -126-27). When a child is charged with a delinquent act by petition, "the juvenile court must conduct a hearing in order to determine whether there is a need for rehabilitation or treatment." *Id.* In juvenile court, "[h]earings in juvenile matters shall be conducted in two separate phases, the adjudicatory hearing, and the dispositional hearing, which may be continuous." Tenn. R. Juv. P. 27(b). "The court shall first conduct an adjudicatory hearing to determine if the allegations of the petition are sustained." *Id.* "The adjudicatory hearing is the proceeding at which the court determines whether the factual allegations of the petition are true and whether the evidence supports a finding that a child is delinquent[.]" Tenn. R. Juv. P. 28(a). After hearing the evidence, "the court shall make and file its findings" as to whether the acts ascribed to the child in the delinquency petition were committed by that child. Tenn. Code Ann. § 37-1-129(a)(1). Rule 28(d) of the Tennessee Rules of Juvenile Procedure sets forth the options available to the juvenile court at that juncture:

> At the conclusion of the adjudicatory hearing in a delinquent case, the court shall enter an order in accordance with the following provisions:
>
> (1) If the court is not satisfied that the delinquent charge has been proved beyond a reasonable doubt, it shall enter an order dismissing the petition.
>
> (2) If the court is satisfied that the delinquent charge has been proved beyond a reasonable doubt and that the child is in need of treatment and rehabilitation, it shall enter a finding of guilty, fix a time for a dispositional hearing . . . and, where appropriate, provide for disposition of the child pending the dispositional hearing. . . .
>
> (3) If the court is satisfied that the delinquent charge has been proved beyond a reasonable doubt, but that the child is not in need of treatment or rehabilitation, it shall enter an order dismissing the petition....[3]

---

[3]The definition of "delinquent child" in Tennessee Code Annotated section 37-1-102(b)(10) includes the criterion that the child at issue be "in need of treatment or rehabilitation." "Thus, where a charged offense

*See also* Tenn. Code Ann. § 37-1-129(a)(1), (b).

If the allegations of the delinquency petition are sustained at the adjudicatory hearing, "the court may proceed immediately or at a later hearing to the dispositional phase of the proceeding." Tenn. R. Juv. P. 27(b). The purpose of a disposition in a juvenile court action "is to design an appropriate plan to meet the needs of the child and to achieve the objectives of the state in exercising jurisdiction." Tenn. R. Juv. P. 32. The statutes provide several "treatment, rehabilitation, and commitment options available to the juvenile court in disposing of a delinquency petition." *Rodgers*, 235 S.W.3d at 95 (citing Tenn. Code Ann. § 37-1-131). Specifically,

> (a) If the child is found to be a delinquent child, the court may make any of the following orders of disposition best suited to the child's treatment, rehabilitation and welfare:
>
> (1) Any order authorized by § 37-1-130 for the disposition of a dependent or neglected child;[4]

---

appears to the court to be an isolated instance and there is no other indication that the child is in such need of treatment or rehabilitation, . . . dismissal of the case might be appropriate." Tenn. R. Juv. P. 28, Comm. Cmt.

[4]Pursuant to Tennessee Code Annotated section 37-1-130, if a child is found to be dependent or neglected, the court may make any of the following orders of disposition:

> (1) Subject to the restrictions of § 37-1-129(e), permit the child to remain with the child's parents, guardian or other custodian, subject to conditions and limitations as the court prescribes . . . ;
> (2) Subject to the restrictions of § 37-1-129(e), and subject to conditions and limitations as the court prescribes, transfer temporary legal custody to or grant permanent guardianship in accordance with part 8 of this chapter to any of the following:
> (A) Any individual who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child;
> (B) The department of children's services . . . ;
> (C) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child; or
> (D) An individual in another state with or without supervision by an appropriate officer under § 37-1-142;
> (3) In those counties having a county department of children's services, commit the child to the custody of such county department; or
> (4) Without making any of the foregoing orders, transfer custody of the child to the juvenile court of another state if authorized by and in accordance with § 37-1-141 if the child is or is about to become a resident of that state.

(2)(A) Placing the child on probation under the supervision of the probation officer of the court or the department of children's services, any person, or persons or agencies designated by the court, or the court of another state as provided in § 37-1-143, under conditions and limitations the court prescribes;

. . . .

(3) Placing the child in an institution, camp or other facility for delinquent children operated under the direction of the court or other local public authority;

(4) Subject to the restrictions of § 37-1-129(e), commit the child to the department of children's services, which commitment shall not extend past the child's nineteenth birthday;

(5) Assessing a fine not to exceed fifty dollars ($50.00) for each offense that constitutes a violation of a state law or municipal ordinance;

(6) Committing the child to the custody of the county department of children's services in those counties having such a department;

(7)(A) Ordering the child to perform community service work with such work being in compliance with federal and state child labor laws. . . .

(8)(A) In lieu of committing a child to the custody of the department of children's services and subject to the requirements of subdivision (a)(8)(B), the court may order any of the following if the child is found to be a delinquent child:

(i) Assign a long-term mentor to such child; or

(ii) Require that the delinquent child or any of the child's family members receive counseling services from any counseling service provided through or approved by the juvenile court; . . . .

Tenn. Code Ann. § 37-1-131(a). Conspicuously absent from this legislation is any mention of judicial diversion.

On appeal, the State claims that "there is no record of an actual disposition" of Addison's 2009 theft charge until the juvenile court's order in 2014. The State acknowledges that Addison was placed on probation but argues that "the plan of probation entered at that time was no disposition at all." The State claims that the process used by the juvenile court was actually "judicial diversion" and that it was authorized by Rule 20 of the Local Rules of Practice for Knox County Juvenile Court, which provides:

8

First time juvenile offenders may be eligible for judicial diversion if they are charged with a misdemeanor or a low level felony and have had no other delinquent charges filed against them in any jurisdiction. If a juvenile qualifies for judicial diversion, diversion may be part of a plea agreement with the District Attorney's Office subject to the Court's approval or the juvenile may enter a guilty plea and move the Court to grant diversion in the Court's own discretion.

If a party seeks to have judicial diversion revoked, then a written notice of intent must be filed with the court and served on the client, the child's parents or the attorney of record for the child.

The State claims that the juvenile court's action in 2010 should be construed, not as a disposition, but as judicial diversion or "an informal indefinite pass" on the charge until Addison's eighteenth birthday.

The local rule applicable to the Juvenile Court of Knox County may purport to authorize judicial diversion, but any local rule that is inconsistent with a statute or a procedural rule promulgated by the Tennessee Supreme Court is invalid. Tenn. R. Sup. Ct. 18(c). As noted above, the detailed and comprehensive statutes and Rules of Juvenile Procedure governing delinquency proceedings do not authorize a juvenile court to grant judicial diversion or "an informal indefinite pass" to a juvenile facing a delinquency petition or adjudged delinquent. The statutory scheme provides several "options available to the juvenile court" when disposing of a delinquency petition. *Rodgers*, 235 S.W.3d at 95 (citing Tenn. Code Ann. § 37-1-131). However, the applicable statutes and Rules do not mention judicial diversion.[5] As noted above, the State conceded that there is

---

[5]We note that the Rules of Juvenile Procedure do authorize *pretrial* diversion in delinquent cases according to Rule 23, which provides:

> If a designated court officer determines in an unruly or delinquent case that the child does not wish to contest the allegations of the petition, and that a court hearing is not necessary, the parties, following advisement of rights to the child and the child's parent, may agree to pretrial diversion that would suspend the proceedings and continue the child under supervision under terms and conditions negotiated with the designated court officer and approved by the court.

If the child completes the pretrial diversion agreement, the petition is dismissed. Tenn. R. Juv. P. 23, Comm. Cmt. However, if a new delinquent or unruly petition is filed against the child prior to discharge by the court or the expiration of the pretrial diversion period, or the child otherwise fails to fulfill the terms and conditions of the pretrial diversion agreement, the petition "may be reinstated and the case may proceed to adjudication just as if the agreement had never been entered." Tenn. R. Juv. P. 23(c). Pretrial

no statutory authority for judicial diversion in juvenile court. The clear implication is that judicial diversion is not a statutorily permissible disposition or alternative in a delinquency case. *See* Tenn. R. Juv. P. 32, Comm. Cmt. (recognizing that a trial judge is tasked with choosing among "statutorily permissible dispositions" in delinquent cases); Tenn. Op. Att'y Gen. No. 95-040 (Apr. 18, 1995) ("Applying the general rules of statutory construction, the juvenile court's dispositional authority is apparently limited to that found in T.C.A. [§] 37-1-101, et seq.") (opining that the juvenile courts did not have the dispositional authority to order the administration of physical punishment).

An examination of the timeline in this case further demonstrates that the procedure utilized by the juvenile court does not comport with the relevant statutes and Rules of Juvenile Procedure. The petition was filed in 2009, and Addison signed the juvenile court's Plan of Probation in 2010, but no order was entered on the petition until 2014. According to Rule 28(d), "[a]t the conclusion of the adjudicatory hearing in a delinquency case, the court 'shall enter an order'" either: (1) dismissing the petition if the delinquent charge was not proven beyond a reasonable doubt; (2) dismissing the petition if the delinquent charge was proven beyond a reasonable doubt but the child is not in need of treatment or rehabilitation; or (3) finding the juvenile guilty if the charge was proven beyond a reasonable doubt and the child is in need of treatment and rehabilitation, in which case the court shall also fix a time for a dispositional hearing. Then, "[a]t the conclusion of the dispositional hearing, or as otherwise provided in Rule 18, the court shall enter a dispositional order" in accordance with Tennessee Code Annotated section 37-1-131. Tenn. R. Juv. P. 32(g). "All dispositional orders of the court shall be in writing and signed by the judge." Tenn. R. Juv. P. 32(j).

Here, however, the record does not contain either an adjudicatory order or a dispositional order from the initial proceedings on the delinquency petition involving the theft charge. The record only contains the "Knox County Juvenile Court Plan of Probation" for Addison, which does not contain the statutorily required findings discussed above. Consequently, the record is devoid of any finding that the delinquent charge was proven beyond a reasonable doubt or that Addison was found in need of

diversion was intended "to replace the former practice of holding cases open for further action." Tenn. R. Juv. P. 23, Comm. Cmt.

On appeal, the parties agree that this case did not involve a pretrial diversion agreement. Moreover, the "diversion" in this case did not comply with Rule 23. A pretrial diversion agreement will remain in effect for six months, and for an additional six months only if extended by the court, on application of a party, after notice and a hearing. Tenn. R. Juv. P. 23(b). In addition, when noncompliance with a pretrial diversion agreement is alleged, "the child shall be given written notice of the alleged violation and an opportunity to be heard on that issue, prior to the reinstatement of proceedings under the original charge." Tenn. R. Juv. P. 23(c). Clearly, these procedures were not followed in this case.

treatment or rehabilitation when she was originally placed on probation.

Moreover, "[a] juvenile must receive adequate and fair warning, in writing, of the consequences of violating an order of the court." *Rodgers*, 235 S.W.3d at 96 (citing Tenn. R. Juv. P. Appendix; 28 C.F.R. 31.303(f)(3)(iii)). The employee of juvenile court who testified during the criminal court proceeding acknowledged that Addison was placed on a plan of probation in 2010 and that the plan did not mention that the case was being passed indefinitely. She said a juvenile is usually told in open court if his or her case is passed indefinitely but conceded that she had no knowledge as to whether such a statement was made during Addison's hearing. Although she mentioned a notation by the clerk in the juvenile court's computer system, she admitted that the juvenile court record did not contain any type of minute entry "signed off on by the Court memorializing what happened." She explained that such an entry would create a permanent record in the court system, and the goal, when passing a case indefinitely, is for the case to go away as if it never happened.

Whatever the reason for the juvenile court's decision to forego entering an order, according to the Tennessee Supreme Court,

> The statutory requirements for the entry of a valid court order are mandatory. *See* 13 Am.Jur.2d *Statutes* § 13 (2007). The juvenile court "*must* have entered a judgment and/or remedy in accord with established legal principles based on the facts after a hearing which observes proper procedures." 28 C.F.R. 31.303(f)(3)(ii)(emphasis added). The juvenile "*must* have received adequate and fair warning of the consequences of violation of the order at the time it was issued and such warning *must* be provided to the juvenile ... in writing and be reflected in the court record and proceedings." *Id.* 31.303(f)(3)(iii) (emphasis added). These provisions provide no authority for the substitution of an oral directive for a valid court order. *See* Tenn. Code Ann. § 37-1-102(b)(6) (2005).

*Rodgers*, 235 S.W.3d at 96 (holding that an oral directive by the juvenile court placing a minor under house arrest was not a valid court order). "While the requirement of a written order is statutorily based, the entitlement to adequate and fair notice is also a hallmark of the law of the land and due process clauses of the Tennessee and United States Constitutions." *Id.* (citing U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8; *State v. Pickett*, 211 S.W.3d 696, 702 (Tenn. 2007)). Addison was not provided with written notice that she was being placed on judicial diversion or being given "an informal

11

indefinite pass" that could be revoked until her eighteenth birthday.

Furthermore, the statutory scheme governing delinquency proceedings does not envision that a juvenile court will resolve a delinquency petition by way of "an informal indefinite pass" on the matter until the juvenile's eighteenth birthday. In the case before us, doing so could have delayed resolution of the matter for up to six years. Rule 17 of the Tennessee Rules of Juvenile Procedure imposes time limits on scheduling adjudicatory hearings. If the child is not detained or in custody, the case is to be scheduled for adjudication within thirty days of the date of filing, if reasonable and possible, but "[i]n any event, every case shall be scheduled to be heard within ninety (90) days." Tenn. R. Juv. P. 17(a). A case may be continued "to a date certain as the court may direct" but only "[u]pon good cause being shown." Tenn. R. Juv. P. 17(b). The Rule specifically addresses continuances "in order to emphasize the necessity for timely hearings and to minimize the negative effect that continuances have on children achieving permanency in a timely manner." Tenn. R. Juv. P. 17, Comm. Cmt.

Likewise, Rule 18 of the Rules of Juvenile Procedure imposes time limits on scheduling dispositional hearings. "Disposition shall be made and carried out pursuant to these rules within fifteen (15) days of the adjudicatory hearing if the child is in custody and within ninety (90) days in all other cases." Tenn. R. Juv. P. 18(a). "The time limits prescribed for making and carrying out the disposition may be extended at the request or with the consent of the child or by order of the court upon good cause shown." Tenn. R. Juv. P. 18(b). The court may continue the hearings "for a reasonable period" in order to receive reports and other evidence bearing on the disposition or the need for treatment or rehabilitation. Tenn. Code Ann. § 37-1-129(f). However, "all hearings should be scheduled and held as speedily as possible in the interest of providing timely treatment for children who are found under these rules and the code to require it, and in the interest of allowing children whose cases are eventually dismissed to get on with their lives." Tenn. R. Juv. P. 18, Comm. Cmt. The Committee expressly recognized that "a child's perception of time is quite different from that of an adult, with shorter periods of time being felt as being much extended, so that it is important that whatever action is taken be taken expeditiously, within the limits of practicability." *Id.* As a result, the Committee "strongly urge[d]" that "unless there are legitimate and *extraordinary* reasons" for an extension, there should be compliance with the time limits set forth in the Rules. *Id.* (emphasis added). Simply passing a case "indefinitely," or until the child's eighteenth birthday, does not comply with these rules.

In sum, we conclude that the procedures utilized by the juvenile court failed to comply with the applicable statutes and Rules of Juvenile Procedure, in numerous

respects. Even though judicial diversion was purportedly authorized by the Local Rules of Practice for Knox County Juvenile Court, it was not authorized by the relevant statutes and Rules of Juvenile Procedure governing delinquency proceedings. Addison was placed on probation in 2010 despite the lack of any written order addressing the adjudication or disposition of her case. As a result, Addison was not provided with written notice of any ruling regarding judicial diversion. Finally, the juvenile court delayed the resolution of the proceeding indefinitely, failing to comply with the time limits set forth in the Rules of Juvenile Procedure.

On appeal, Addison asks this Court to "reverse her conviction" on the theft charge in the delinquency petition. We are authorized to dismiss the charge with prejudice solely based on the violation of the time limits discussed above. According to the Committee Comment to Rules 17 and 18 of the Rules of Juvenile Procedure:

> In any case in which the time limits prescribed in Rule 17 are not complied with, or in which the provisions for continuances are not complied with, the court may dismiss the charges with prejudice where it determines that failure to comply with the time limits constitutes a violation of the respondent's right to a speedy trial. In any case in which the time limits prescribed in Rule 18 are not complied with, or in which the provisions for extensions are not complied with, the court may discharge the child from the jurisdiction of the juvenile court if the court determines that the interests of justice so require. However, in such cases the charges themselves would not be dismissed and the child would still have a "record" or involvement with the juvenile court.

Due to the numerous deficiencies in the proceedings below, we deem it appropriate to vacate the 2014 delinquency adjudication and remand for dismissal of the 2009 delinquency petition with prejudice. All other issues are pretermitted.

## V. CONCLUSION

For the aforementioned reasons, the decision of the criminal court is hereby vacated and remanded for dismissal of the petition. Costs of this appeal are taxed to the appellee, the State of Tennessee, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE