IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 14, 2023 Session

## STATE OF TENNESSEE v. SHENESSA L. SOKOLOSKY[1]

**Appeal from the Criminal Court for Smith County**
**No. 2017-CR-11      Brody Kane, Judge**

_____

**No. M2022-00873-CCA-R3-CD**

_____

The Defendant, Shenessa L. Sokolosky, appeals from the Smith County Criminal Court's probation revocation of her two consecutive eleven-month, twenty-nine-day sentences for her guilty-pleaded misdemeanor convictions for drug possession and possession of drug paraphernalia. On appeal, the Defendant contends that the trial court abused its discretion by revoking her probation. We dismiss the Defendant's appeal pursuant to the mootness doctrine.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Comer L. Donnell, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Director; Brittany Davis Deatherage (at revocation hearing), Assistant District Public Defender, for the Appellant, Shenessa L. Sokolosky.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jason Lawson, District Attorney General; and Jack A. Bare, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 16, 2019, the Defendant pleaded guilty to marijuana possession and possession of drug paraphernalia, at which time she received two consecutive eleven-month, twenty-nine-day sentences to be served on probation. A February 19, 2020 probation violation warrant alleged that the Defendant had not reported to her probation "case officer" since November 1, 2019 and that she had not made any payments toward

_____

[1] The record contains various spellings of the Defendant's name. We use the spelling contained in the indictment.

court costs. On April 28, 2022, more than two years later, the warrant was served upon the Defendant, who was held without bond.

On May 23, 2023, the Defendant filed a motion to dismiss the revocation proceedings on the basis that the "policies and practices" of the former private, for-profit probation company supervising the Defendant's probation violated principles of due process and the requirements for warrants. The Defendant likewise argued that employees of the current, county-operated probation office could not testify about the warrants obtained by the private probation company because the warrants contained inadmissible, unreliable hearsay. Notably, the motion stated that the private probation officer, Jenna Meness, supervising the Defendant testified in general sessions court in connection with an unrelated case that Ms. Meness's policy and practice was "to directly relay offers and enter into plea deals" for a defendant's punishment "for violations of probation sworn out by the private company, with financial interests, in Smith County General Sessions Court." The motion also stated that Ms. Meness testified that it was her policy and practice "to require probationers who were about to expire to execute a 'PROBATION AGREEMENT' in her office that would extend their probation" one year "without an attorney present and without a hearing in open court, or a warrant for arrest." The motion stated that in cases involving two other defendants, Ms. Meness testified in the general sessions court that her office had access to presigned warrants by the former general sessions judge. In the present case, the parties and the trial court did not dispute Ms. Meness's previous testimony in the general sessions court.

At the June 2, 2022 hearing on the motion to dismiss the revocation proceedings, Mary Bush, Director of Smith County Misdemeanor and Recovery Court Probation, testified that she had been employed by Smith County for approximately one year and that she had worked previously as a probation officer with the Tennessee Department of Correction for three and one-half years. Ms. Bush stated that before she began working as a probation officer for Smith County, misdemeanor probation was supervised, in part, by Smith County and, in part, by a private, for-profit company.

Ms. Bush testified that she did not have a financial stake in the outcomes of her probationers' cases and that her income was unaffected by the trial court's decisions at revocation proceedings. She said that she had testified in other cases about the policies and procedures of the private probation company, which previously supervised the Defendant's probation. Ms. Bush said that she never used presigned probation violation warrants and that she never extended the probationary period for failing to pay costs and fees without having the probationer appear in court for a hearing and with an attorney. She said that she reviewed the monthly court costs with each of her probationers. She said, as well, that about one month before probation was scheduled to expire, she explained to the probationer the amount owed and that if the probationer could not pay, a warrant would be

"issued based on costs to discuss . . . before the judge." She said that she did not extend probationary periods in her office "without any lawyers present."

Ms. Bush testified that some of the files she "inherited" from the private probation company "were in disarray." She said that she and the prosecutor reviewed some of these files and that "we . . . got the warrants I believed were not appropriate dismissed." Ms. Bush said that she reviewed all of the files and that she ensured "no inappropriate actions [were] taken." When asked to explain the meaning of "inappropriate," she said it was primarily "warrants that appeared to be presigned." The trial court asked how she could determine if a warrant was presigned, and Ms. Bush stated, "It really, you couldn't tell, unless you saw the original, but the only ones that I would question were the ones that were handwritten, because that was something that I was unfamiliar with. As a prior probation officer, we've never handwritten any type of warrant." She clarified that the affidavit portion of a probation violation warrant would be handwritten. The defense stipulated that the warrant in this case was not handwritten.

A February 2020 general sessions probation violation warrant in an unrelated case was received as an exhibit. The warrant reflects a handwritten affidavit stating that the defendant refused a search of his vehicle when stopped by the police, violating the rule that he agree to a search without a warrant. The affidavit was not notarized but was signed by Sara Brooks. The warrant was signed by a general sessions court judge, but the signature is not legible. Ms. Bush reviewed the document and stated that Ms. Brooks's married name was Meness. Ms. Bush stated that she reviewed this document previously and that "an order was done to dismiss [the defendant] from probation." An August 17, 2020 "probation amendment" in connection with this defendant was received as an exhibit and reflects that the defendant's probation was extended for one year "upon the request of the misdemeanor probation officer." Although "Judge Michael Collins" is typed below the general sessions judge's signature line, the signature appears to be that of Judge "Randy Wakefield."

When asked if the private probation company attempted to "abscond" with the probationers' files, Ms. Bush stated, "Yes. The reason why [Ms. Lindstorm] didn't take them was, because she wanted the filing cabinets, inside the filing cabinets were the files. However, they were too heavy, so the files were dumped in the floor. . . . They've been in my custody ever since." Ms. Bush said that she could not determine if anything had been removed or missing from the files before she took custody of them. She said that although all of the probationers' files were located, the files were in "disarray."

Ms. Bush testified that she did not have any personal knowledge of the allegations contained in the probation violation warrants prepared by the private probation company. She agreed that she was not present for any of the meetings or telephone calls between the probationers and the private probation supervisors. She agreed she did not have access to

any text messages or emails that might have been exchanged between probationers and the private probation supervisors. When asked if "we think that those fill-in-the-blank warrants are logically the presigned warrants," Ms. Bush stated, "Yes." She said, though, that "we have never been told that." She agreed that she did not have a method for determining which, if any, warrants were presigned.

On cross-examination, Ms. Bush testified that she inherited the Defendant's file from the private probation company and that an outstanding probation violation warrant existed. Ms. Bush agreed that although "things were a mess" because of the private probation company, her review of the Defendant's file did not reveal anything Ms. Bush deemed "inappropriate or missing." She said she did not find a presigned warrant or any probation extensions for a previous violation in the Defendant's file. Ms. Bush said that the Defendant reported to the private probation company for about two months before the violation warrant was filed.

Ms. Bush reviewed the probation violation warrant in this case and testified that the affiant was Jenna Meness, who worked at the private probation company. Ms. Bush stated that she was not employed by Smith County when the warrant was obtained. She said, though, the warrant reflected the signatures of Ms. Meness and of a judge, the rules of probation alleged to have been violated, the Defendant's term of probation, the court clerk's stamp, and the date. Ms. Bush stated that she did not find anything wrong with the warrant.

The February 19, 2020 criminal court probation violation warrant was received as an exhibit. The warrant reflected that Ms. Meness signed the affidavit, which alleged that the Defendant violated the rule requiring her to "keep all appointments with case officer" by not reporting to probation since November 1, 2019, by missing her last appointment on November 8, 2019, and by not contacting the probation office. The warrant, likewise, alleged that the Defendant violated the rule requiring her to follow all of the case officer's instructions by not reporting to the probation office and by not making "payments as scheduled." The warrant also alleged that the Defendant violated the rule to pay court costs, fines, and supervision fees as directed. Ms. Meness's signature was notarized, and the warrant was signed by Criminal Court Judge Brody Kane. The warrant reflects the circuit court clerk's stamp, and the affidavit was typed.

On redirect examination, Ms. Bush testified that she possessed no personal knowledge about the allegations in the Defendant's probation violation warrant but that her review of the file reflected the Defendant stopped reporting to the probation office, which was the basis of the allegation. She agreed, though, she had no personal knowledge of the information contained in the file, although she relied upon its contents.

Upon examination by the trial court, Ms. Bush testified that there were four filing cabinet drawers of probation violation warrants obtained from the private probation company. She agreed that she became the supervising officer in the Defendant's case one year before the motion hearing and that she had not seen the Defendant since becoming her probation officer.

Smith County Circuit Court Deputy Clerk Stacey Dias testified that she was responsible for maintaining court files, including the Defendant's file. Ms. Dias reviewed the court file and stated that it was "[p]retty much" in order. She said that the Defendant pleaded guilty on August 15, 2019, and received consecutive sentences of eleven months, twenty-nine days to be served on probation. Ms. Dias said that the probation violation warrant was issued on February 19, 2020; that the affiant, Ms. Meness, signed the affidavit; and that Criminal Court Judge Body Kane signed the warrant. Ms. Dias agreed that the warrant reflected the allegations against the Defendant, the term of probation, the court clerk's stamp, and the date.

Ms. Dias testified that at the time of the motion hearing, the Defendant owed an aggregate of $2,277 in fines, costs, and fees and that the Defendant had not made any payments.

The recordings of three unrelated general sessions court probation revocation hearings were received as an exhibit. Neither the trial court nor the State disputed the contents of the recordings, which were offered as further evidence of the private probation company's probation policies and practices. In the probation revocation hearing related to L.M.W.[2], Ms. Meness testified that she was not an attorney, that her practice was to make probation extension offers to probationers outside the presence of counsel, and that she followed this practice in the defendant's case. In the probation hearing related to D.B., Ms. Meness testified that the defendant violated his probation by failing to meet with his probation officer. She explained that she used presigned probation violation warrants but did not recall if a presigned warrant was used in this case. She stated that if she ran out of presigned warrants, she used "handwritten" warrants.

The trial court determined that it did not need to review the recordings. The court stated that although it was "troubled" by what had occurred in general sessions court, the warrant in this case was signed by the judge presiding over the motion hearing. The court stated that if it received a warrant without a notary seal, it sent "it back." The court stated that if it received a warrant with a notary seal but without a signature, which had previously occurred in other cases, it sent the warrant back "with a strong rebuke from the Court."

---

[2] We use the initials of other probationers as their names are irrelevant to this appeal.

The court further stated that its usual practice was to review a probation revocation warrant while a probation officer was present. The court found as follows:

> I also have the testimony of [Ms. Bush] . . . that she never saw [the Defendant]. This was early on. This would have been shortly before Ms. Bush took over. She had not seen [the Defendant] in that period of time. And I also have testimony of Ms. Dias that no payments were made. This would be somewhat corroborative of what the allegations are made here within the affidavit itself.

> If this was a different situation, where this was a warrant that came in and it was not followed up by some of the supervision and not corroborated by what, this testimony that's corroborated the allegations that's in this affidavit, I think the Court would be more inclined to grant the defense motion. But I'm satisfied in this one, that this document is what it purports to be, based on my practice and the testimony of the two witnesses that offered testimony.

The trial court found that the affidavit "is what it purports to be and that the business record exception would be satisfied in this instance, based on the facts I have before me in this matter." At this juncture, the court permitted the defense to make additional argument. The defense argued that it had the right to cross-examine Ms. Meness, the affiant of the probation violation warrant. The court interjected, asking if Ms. Meness were available and if anyone had attempted to subpoena her. Defense counsel said that the State had never presented Ms. Meness as a witness until counsel "subpoenaed her last time." Counsel said she attempted to subpoena Ms. Meness in this case but that it "didn't get served." Counsel said that Ms. Meness "never comes to any of these hearings" and noted that the jail was "full" of defendants whose cases involved similar circumstances.

Defense counsel argued in connection with the business records exception to the hearsay rule that the information contained in the warrant was untrustworthy based upon the practices and policies of the private probation company. Although counsel commended Ms. Bush for "clean[ing] this up," counsel argued that Ms. Bush did not have personal knowledge of the facts alleged in the warrant to establish probable cause.

The trial court stated that it had never signed a warrant without a sworn affidavit, that it had not done "what was done in the General Sessions Court of this county," and that it had not extended any defendant's probation "without coming to Court first." The court found that "what was occurring in General Sessions . . . was not happening here in the Criminal Court of this district." The court denied the motion to dismiss and immediately held a probation revocation hearing.

At the revocation hearing, Ms. Bush testified that she inherited the Defendant's file, which contained an active probation warrant, from the private probation company. She said the warrant was typed and that she was not the affiant. She described a typed affidavit as "correct" and a handwritten affidavit as not correct. She said the trial judge presiding over the revocation hearing signed the warrant.

Ms. Bush testified that on August 15, 2019, the Defendant was placed on probation for two years, which would have expired on August 14, 2021. A copy of the probation violation warrant was received as an exhibit over the defense's hearsay objection. Ms. Bush stated that Ms. Meness, who was employed by the private probation company, was the affiant, that the trial judge signed the warrant on February 19, 2020, and that it was filed with the court clerk's office on February 24, 2020. Ms. Bush stated that the warrant alleged that the Defendant had not reported to Ms. Meness since November 1, 2019[3], that the Defendant had "missed" the last appointment on November 8, that the Defendant had not had any contact with the probation office since November 8, that she had not "made payments as scheduled," and that she had not made payments toward court costs.

Ms. Bush testified that she had never "seen" or "supervised" the Defendant. Ms. Bush stated that she did not have any personal knowledge of the Defendant's probation appointments, although she relied on the contents of the file, which reflected "that the last scheduled appointment was November 11, 2019, that her signature as on, and there's no more after."[4] Ms. Bush agreed that she had no knowledge of any telephone calls that might have occurred and that she did not have access to any of Ms. Meness's telephone records. Ms. Bush said that she did not have any knowledge about whether the Defendant had been incarcerated. Ms. Bush said, though, that the probation violation warrant was served when the Defendant was incarcerated in the Davidson County Jail. Ms. Bush agreed that her testimony was based solely upon the contents of the file she inherited from Ms. Meness.

The trial court inquired about the Defendant's reporting after Ms. Bush became the Defendant's probation officer in April 2021. Ms. Bush testified that the Defendant had not reported to her office. Ms. Bush, likewise, said that since becoming the supervising probation officer, the Defendant had not made any payments toward fines, costs, and fees.

---

[3] The transcript reflects Ms. Bush stated that the Defendant had not reported to her probation officer since "November the 11th of 2019" and that the Defendant "missed" the last appointment on "November the 8th of 2019." The record reflects that either Ms. Bush misspoke and should have stated November 1, rather than November 11, as the Defendant's last report date or that the transcript contains a typographical error. Regardless, Ms. Bush read from the warrant, which is contained in the record and which states the Defendant had not reported to her probation officer since November 1, 2019.

[4] Again, the warrant, which was contained in the file, reflects that the Defendant last reported to her probation officer on November 1, 2019, and that the Defendant did not report to her probation officer on November 8. Any reference to November 11, is a typographical error or a misstatement by the witness.

Ms. Dias testified that her job was to maintain the court files and enter information into the court clerk's computer system. When asked about the status of the Defendant's "court fines and costs," Ms. Dias said the Defendant owed $2,277. Ms. Dias said that the Defendant had not made any payments toward costs and fines since being placed on probation.

The defense objected and argued that the State was required to show that the Defendant "willfully did not pay" and that the State had failed to present any evidence in this regard. Defense counsel objected to any revocation on the basis of court costs and fines.

The trial court found by the preponderance of the evidence that the Defendant violated the conditions of her release by failing to report to her probation officer and by failing to pay costs and fines. The court acknowledged that it did not know if the Defendant had been incarcerated but that no evidence showed she had been incarcerated. The court noted that the warrant had been pending for an extensive time and that "[u]sually they do like a little search to see if you're in jail. So, I'm going to find that you violated the terms of your probation."

The trial court found that this was the Defendant's first probation violation and that the Defendant had been in confinement for thirty-five days. The court returned the Defendant to probation after extending the supervision period by eleven months, twenty-nine days. The court provided the Defendant with thirty days to "get back on [her] feet" before requiring the Defendant to make twelve equal payments to resolve the outstanding $2,277 fines, costs, and fees. The record contains a June 2, 2022 revocation order reflecting that the Defendant was provided credit for time served and returned to probation with an eleven-month-twenty-nine-day extension of probation.

However, for reasons not explained in the record, the trial court entered a June 8, 2022 "AGREED ORDER DENYING DEFENDANT'S MOTION TO DISMISS PROBATION VIOLATION." The typed order states that the matter came before the trial court on June 2, upon the Defendant's motion to dismiss and that the court found that "Smith County Misdemeanor Private Probation's records are reliable and trustworthy hearsay," with the added handwritten words "in this case." The order states that the motion to dismiss is denied. The Defendant filed a timely notice of appeal on June 28, 2022. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking her probation. She argues that the probation violation warrant should have been excluded from evidence because it contained inadmissible hearsay. Alternatively, the Defendant asserts that even if the warrant contained reliable hearsay, the State failed to prove by a

preponderance of the evidence that she violated the conditions of her probation. The State responds that the warrant contained reliable hearsay and that the court did not abuse its discretion by revoking the Defendant's probation.

After oral argument, this court entered an order directing the parties to show cause whether the appeal should be dismissed as moot because the record reflected that the Defendant had served her sentence after a subsequent probation revocation proceeding in which she was ordered to serve the remainder of her sentence in confinement. *State v. Shenessa L. Sokolosky*, No. M2022-00873-CCA-R3-CD (Tenn. Crim. App. Jan. 24, 2024) (order); *see* T.R.A.P 14(a), (c).

Generally, our appellate courts will dismiss an appeal as moot "when 'by a court decision, acts of parties, or other causes occurring after the commencement of the action the case has lost its controversial character.'" *West v. Vought Aircraft Industries, Inc.*, 256 S.W.3d 618, 625 (Tenn. 2008) (quoting *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945)). "A case must remain justiciable through the entire course of litigation, including any appeal." *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005); *see State v. Ely*, 48 S.W.3d 710, 716 n.3 (Tenn. 2001). A case is moot and not justiciable if it "no longer involves a present, ongoing controversy" and "no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Alliance for Native American Indian Rights*, 182 S.W.3d at 338; *see Knott v. Stewart County*, 207 S.W.2d 337, 338-39 (Tenn. 1948). However, exceptions to the mootness doctrine exist when "the appeal involves issues of great importance to the public and to the administration of justice" and when "the appeal involves issues capable of repetition yet evading review." *State v. Rodgers*, 235 S.W.3d 92, 97 (Tenn. 2007); *see Dockery v. Dockery*, 559 S.W.2d 952, 954-55 (Tenn. Ct. App. 1997); *see also McCannless*, 188 S.W.2d at 747; *State v. Montgomery*, 929 S.W.2d 409, 414 (Tenn. Crim. App. 1996).

This court's order noted that the record reflects, in relevant part, that on August 16, 2019, the Defendant pleaded guilty and received two consecutive eleven-month, twenty-nine-day sentences with release eligibility at 0% to be served on probation. The Defendant received jail credit for approximately thirty-one days in confinement. On June 2, 2022, the trial court revoked the Defendant's probation but returned her to supervision with an eleven-month, twenty-nine-day extension. The Defendant received jail credit for approximately thirty-five days in confinement. The Defendant filed a timely notice of appeal on June 28, 2022, challenging the trial court's June 2, 2022 revocation order. While this case was pending appellate review, a subsequent probation violation warrant issued on August 12, 2022. The warrant alleged that the Defendant had absconded from probation supervision; that she admitted using methamphetamine, amphetamine, and marijuana on August 8, 2022; that she tested positive for the same substances on August 12, 2022; that she failed to make payments toward court costs, fines, and fees; and that she failed to

complete an alcohol and drug assessment as ordered by the trial court. An October 28, 2022 order reflects that the trial court revoked the Defendant's probation and ordered her to serve the remainder of her sentence in confinement. The record does not contain any additional information about this subsequent probation violation and revocation. As a result, it appeared to this court that subsequent proceedings were determinative of the outcome of this appeal in that the Defendant had completed service of her effective sentence and had been released from confinement, rendering this appeal moot.

In response to this court's order, the Defendant argued that even if her sentence had expired, the potential future collateral consequences of the probation violation entitled her to seek appellate relief. Additionally, the Defendant stated that she "not only requested this Court to reverse the revocation order that reinstated her term of confinement, but she also requested this Court to vacate and dismiss the underlying probation violation warrants that led to the probation revocation." We interpret the Defendant's position as challenges to the June 2, 2022 revocation order in which she was returned to probation and to the October 22, 2022 revocation order, which was entered after the notice of appeal was filed in this case and which required her to serve the remainder of her sentence in confinement. As a preliminary matter, we decline to review the October 2022 revocation because the revocation is not properly before the court and because the record contains insufficient information to facilitate appellate review. *See* T.R.A.P. 24(b); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987); *State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981); *State v. Baron*, 659 S.W.2d 811, 815 (Tenn. Crim. App. 1983); *State v. Taylor*, 669 S.W.2d 694, 699 (Tenn. Crim. App. 1983)); *see also State v. Ivy*, 868 S.W.2d 724, 728 (Tenn. Crim. App. 1993). Our review in this appeal is limited to the June 2, 2022 revocation.

The Defendant concedes that she "has served the time required in this case." The documents submitted by the Defendant, the authenticity of which the State does not dispute, reflect that after the trial court revoked probation, the Defendant was returned to probation supervision in June 2022; that after the subsequent probation violation issued, the Defendant was incarcerated beginning in August 2022; and that after the October 2022 order for her to serve the remainder of her sentence in confinement, she was released on "time served" in July 2023. We agree with the Defendant that she has served the entirety of her sentence in this case.

The Defendant relies upon *State v. Rodgers*, 235 S.W.3d 92 (Tenn. 2007), for the proposition that this appeal should not be dismissed pursuant to the mootness doctrine. In *Rodgers*, the juvenile offender was adjudicated delinquent for assault and was committed to the Tennessee Department of Children's Services, which was suspended to probation. During the probationary period, the juvenile was alleged to have violated a condition of probation involving house arrest, which the juvenile court did not reduce to writing in the

probation order but stated at the hearing was a condition of probation. The juvenile court determined that the juvenile had violated the conditions of his probation by leaving his home, and the court ordered the juvenile to be committed to a youth center. Afterward, the juvenile did not seek appellate review of the propriety of the probation revocation. Rather, the juvenile sought relief and release from commitment pursuant to the Juvenile Post-Commitment Procedures Act, which provides similar protections as the Post-Conviction Procedures Act to adult offenders, but the trial court denied relief based upon the juvenile court's oral directive that the juvenile be placed on house arrest. *See* T.C.A. §§ 37-1-301 to -322 (2005). The juvenile appealed, and the intermediate appellate court determined that the appeal was moot because the juvenile had reached the age of majority during the pendency of the appeal and was no longer subject to commitment resulting from any delinquency. *Rodgers*, 235 S.W.3d at 93. Our supreme court reversed.

The supreme court determined that the oral directive of house arrest failed to comply with the Appendix to Tennessee Rule of Juvenile Procedure section 31.303(f)(3) regarding valid court orders and that, as a result, the juvenile court's commitment order was invalid because the requirement of house arrest was never reduced to writing. *Id*. at 95-96. The court further determined that the juvenile was entitled to relief pursuant to the Juvenile Post-Commitment Procedures Act. *Id*. at 96-97; *see* T.C.A. § 37-1-317(a) (2005). The court concluded that the juvenile's due process rights had been violated by the lack of adequate notice of the basis for which probation revocation was sought, and that as a result, the probation revocation was void or voidable pursuant to the Juvenile Post-Commitment Procedure Act. *Rodgers*, 235 S.W.3d at 97. Further, the court concluded that the mootness doctrine did not apply and that the case involved an existing controversy that called for adjudication because a juvenile probation revocation, as distinct from delinquent acts, could be an applicable enhancement factor for an adult offender upon a subsequent conviction. *Id*. at 98; *see* T.C.A. §§ 40-35-114(8) (2019) ("The defendant . . . failed to comply with the conditions of a sentence involving release into the community[.]"); -114(16) ("The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[.]"). The juvenile's release from the youth center was of no consequence because of the potential collateral consequences stemming from the probation revocation. The court, however, did not remove the statutory requirement that only a juvenile in custody under a commitment order is permitted to file a juvenile post-commitment petition. *See Jeremy Shane Johnson v. State*, No. E2007-02531-COA-R3-CV, 2008 WL 5158230, at *1-2 (Tenn. Crim. App. Dec. 8, 2008). Whether the juvenile was in physical custody was irrelevant in determining whether he was entitled to relief pursuant to a post-commitment claim. The ultimate issue in *Rodgers* was whether the juvenile was in custody as a requirement to seek relief, and the probation revocation's having future collateral consequences satisfied the custody requirement, which rendered mootness irrelevant.

The Juvenile Post-Commitment Act's custody requirement is analogous to the Post-Conviction Procedures Act for adult offenders. This court has previously concluded that a petitioner for post-conviction relief satisfies the custody requirement when the petitioner is serving a sentence on probation at the time a petition is filed. *See Joseph Floyd v. State*, No. W2015-02232-CCA-R3-PC, 2016 WL 4545955, at *2 (Tenn. Crim. App. Aug. 30, 2016); *see also* T.C.A. § 40-30-102(a). Our appellate courts have also concluded that the custody requirement to collaterally challenge a judgment of conviction pursuant to post-conviction relief is satisfied when the conviction can be used to enhance a sentence for a subsequent conviction, even if the sentence has been served or expired when the petition is filed. *See Hickman v. State*, 153 S.W.3d 16, 23 n.4 (Tenn. 2004); *see also Joseph Floyd*, 2016 WL 4545955, at *2. Further, misdemeanor convictions might "lead to a collateral legal consequence in the future" for enhancement purposes, and are "a proper subject for post-conviction relief." *Ledford v. State*, 708 S.W.2d 419, 420 (Tenn. Crim. App. 1985); *see Brandon S. Massengill v. State*, No. E2015-00501-CCA-R3-PC, 2015 WL 7259279, at *2 (Tenn. Crim. App. Nov. 17, 2015). Therefore, even if a misdemeanor sentence has expired, such as the Defendant's sentence in this case, a defendant is still permitted to seek post-conviction relief because a conviction or probation violation may impose a collateral sentencing consequence upon a future conviction.

However, the Defendant has not sought post-conviction relief that would require adjudication of her claims and render the mootness doctrine inapplicable. Her desired relief is not that of post-conviction relief, but an appeal from the probation revocation proceedings at which she received adequate notice of the allegations against her. At this time, her sentence is expired, and she is no longer in the custody of law enforcement pursuant to her sentence in this case.

We decline to extend the principles espoused in *Rodgers* to the present case, in which the Defendant challenges a probation revocation but has fully served her misdemeanor sentence. The Defendant has served her sentence and is no longer constrained by confinement or probation supervision in this case. She has received the relief to which she would be entitled to by this court at this juncture, and as a result, we conclude that no active controversy exists for this court to resolve. The appeal of the probation revocation is moot.

In consideration of the foregoing and the record as a whole, the appeal is dismissed pursuant to the mootness doctrine.

_____
ROBERT H. MONTGOMERY, JR., JUDGE