FILED
12/16/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2024

**STATE OF TENNESSEE v. ARTEVIOUS MOORE, JR.**

**Appeal from the Criminal Court for Shelby County**
**Nos. 23-02620, 19-06234     W. Mark Ward, Judge**

_____

**No. W2024-00185-CCA-R3-CD**
_____

The Defendant, Artevious Moore, Jr., pled guilty to theft of property and was placed on judicial diversion. Thereafter, the Defendant pled guilty to aggravated assault, leaving sentencing to the trial court. He also agreed to have the trial court rescind his judicial diversion, enter an adjudication of guilt as to the theft charge, and allow the court to impose the sentence. After a consolidated sentencing hearing, the court denied alternative sentencing and sentenced the Defendant to three years for the aggravated assault conviction and two years for the theft conviction. The trial court ordered the sentences to be aligned consecutively for an effective sentence of five years to be served in confinement. The Defendant appealed, challenging the consecutive sentences and the denial of alternative sentencing. Upon our review, we respectfully affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT W. WEDEMEYER, J., joined.

Phyllis Aluko, Chief Public Defender, and Barry W. Kuhn, Assistant Public Defender, Law Office of the Shelby County Public Defender, Memphis, Tennessee (on appeal); and Mozella T. Ross, Assistant Shelby County Public Defender, Memphis, Tennessee (at sentencing), for the appellant, Artevious Moore, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Marie Ford, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A. THEFT CONVICTION AND JUDICIAL DIVERSION

On July 16, 2020, the Defendant pled guilty to the theft of a car as a Class D felony. The trial court granted judicial diversion and placed the Defendant on supervised probation for three years. *See* Tenn. Code Ann. § 40-35-313. The conditions of probation included that the Defendant would abide by all laws and not possess a firearm.

On November 28, 2021, while still on judicial diversion, the Defendant received a misdemeanor citation for unlawful possession of a handgun and possession of 11.2 grams of marijuana. The State filed a petition to terminate judicial diversion, and a warrant was issued for the Defendant's arrest. The trial court found a violation of the diversion conditions but reinstated the diversion in light of mitigating arguments.

### B. AGGRAVATED ASSAULT

On September 17, 2022, the Defendant became involved in a violent altercation at the scene of a car accident. Upon arriving at the intersection of Claudette and Cottonwood Streets in Memphis, the Defendant exited his vehicle holding a handgun and argued with one of the individuals involved in the accident, Mr. Carroll Mobley. The argument escalated when the Defendant pointed his gun at Mr. Mobley, who retrieved a firearm from his own vehicle. Both men exchanged gunfire, resulting in property damage but no injuries.

Officer Antonio Anthony, who was patrolling nearby, responded to the call about the incident. At the scene, Officer Anthony attempted to detain the Defendant. However, the Defendant fled on foot, jumping over fences and trying to evade capture. He then fled the scene in his car. After his car sustained a flat tire, he surrendered and was taken into custody.

During subsequent questioning, the Defendant claimed that his involvement began when he observed the accident scene from his car and live-streamed the incident on Facebook. He alleged that Mr. Mobley became confrontational and pointed a gun at him, prompting the Defendant to fire "warning shots." The Defendant admitted to firing multiple rounds but maintained that his actions were in self-defense.

2

Following this incident, the State filed a second petition to revoke judicial diversion, citing the aggravated assault charge, failure to complete community service, and failure to pay court costs and supervision fees.

## C.   SENTENCING HEARING

On January 5, 2024, the Defendant pled guilty to aggravated assault, agreeing to a sentence of three years with the trial court to determine how the sentence would be served. He also agreed to have the trial court rescind his judicial diversion in the prior case, enter an adjudication of guilt as to the theft charge, and allow the court to impose the sentence.

Following the plea, the court moved directly into a consolidated sentencing hearing to address the aggravated assault charge and the violation of the terms of judicial diversion. At this hearing, the State presented evidence of the Defendant's criminal history, which included prior juvenile adjudications for reckless endangerment, aggravated burglary, attempted robbery, and vandalism.

The Defendant testified on his own behalf and requested an alternative sentence to incarceration. He emphasized his role as the primary caretaker for his grandmother, whom he supported financially through his landscaping business and temporary employment. The Defendant also testified that he was twenty-five years old, a high school graduate, and had one child who lived with the child's mother. He expressed remorse for his actions, claiming that he had learned from his mistakes and intended to comply with the terms of probation if granted another opportunity.

The Defendant specifically addressed the aggravated assault incident, stating that his actions were a result of being "nosy" when he decided to stop and observe the accident scene. He claimed that one of the individuals involved in the accident became hostile, leading him to fire "warning shots" into the ground. The Defendant attributed his involvement in the incident to poor judgment and stated that he regretted the consequences it had brought upon his life.

During the initial hearing, the court questioned the Defendant about his juvenile record, including weapons offenses and probation violations. The court found discrepancies in the Defendant's account of his juvenile history and that recited in the presentence report.

Given the inconsistencies in the Defendant's testimony and the potential impact of his juvenile record on sentencing, the court bifurcated the hearing. The court emphasized

that it could not fully evaluate the Defendant's suitability for probation or alternative sentencing without verifying the details of his prior offenses and assessing his amenability to rehabilitation.

## D. ANNOUNCEMENT OF SENTENCE

On February 1, 2024, the trial court reconvened the hearing. The court reviewed the juvenile records, which confirmed an extensive history of adjudications, including possession of a firearm during the commission of a dangerous felony, multiple counts of reckless endangerment with a weapon, aggravated burglary, assault, evading arrest, and other offenses. The court observed that the criminal history showed a consistent pattern of criminal behavior and repeated interactions with the justice system, even as a juvenile. The court determined that these findings corroborated its earlier concerns about the Defendant's credibility and reinforced the need for a custodial sentence.

The trial court sentenced the Defendant to three years for the aggravated assault conviction and two years for the theft of property conviction. It ordered that the sentences be aligned consecutively, resulting in a total effective sentence of five years. The court also denied probation or other forms of alternative sentencing, finding that confinement was the only appropriate response given the Defendant's extensive criminal history, the seriousness of his offenses, and the failure of previous rehabilitative efforts.

As to the denial of alternative sentencing, the trial court found that confinement was necessary to protect society from further criminal conduct by the Defendant, who had demonstrated a long history of criminal behavior beginning in his youth. This history included adjudications for reckless endangerment, aggravated burglary, attempted robbery, vandalism, and possession of firearms. The court noted that the Defendant's criminal record extended into adulthood with convictions for theft, evading arrest, and aggravated assault, as well as violations of the terms of judicial diversion.

The trial court considered whether less restrictive measures had been successfully applied in the past and concluded that they had not. Despite being granted judicial diversion twice, the Defendant committed multiple probation violations, including the illegal possession of a handgun, possession of marijuana, and the aggravated assault offense that led to the current proceedings. The court noted that diversion and probationary measures had proven insufficient to deter the Defendant from continued criminal activity. The court also observed that the Defendant had violated the conditions of his juvenile probation as well.

4

As to the alignment of the sentences, the trial court ordered consecutive sentences based on the Defendant's extensive record of criminal activity. *See* Tenn. Code Ann. § 40-35-115(b)(2). The court emphasized that the Defendant's criminal activity was both frequent and severe, with offenses spanning several years and involving multiple violations of the law. The court highlighted the Defendant's repeated possession of firearms in contravention of the law and noted that his behavior demonstrated a pattern of disregard for legal authority and public safety. The court also found that consecutive sentences were necessary to protect the public, as the Defendant's criminal history indicated a low likelihood of successful rehabilitation.

The Defendant filed a timely notice of appeal as to the sentences imposed in each case on February 6, 2024. Because both appeals involve common questions of law and common facts, we consolidated the cases on our motion pursuant to Tennessee Rule of Appellate Procedure 16(b).

## STANDARDS OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). As we discuss below, the Defendant raises two issues in this case: whether the trial court should have allowed the sentences to run concurrently instead of consecutively and whether it should have imposed an alternative sentence to incarceration. Both issues relate to sentencing. Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

This standard of appellate review applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As the supreme court has clarified, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

Similarly, when a defendant challenges the trial court's decision to impose consecutive sentences, we also review that decision for an abuse of discretion accompanied by a presumption of reasonableness. *See State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Thus, we defer to "the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of

the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id.* at 861. As our supreme court has recognized, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862.

## ANALYSIS

In this appeal, the Defendant first argues that the trial court erred in ordering him to serve his two-year theft of property sentence consecutively to his three-year aggravated assault sentence. The Defendant then argues that the trial court erred in denying him probation as an alternative sentence to incarceration. We address each of these issues in turn.

### A.     CONSECUTIVE SENTENCING

The Defendant first argues that the trial court could not impose consecutive sentences consistent with Tennessee Code Annotated section 40-35-115(b). He asserts that his criminal history is not extensive and that the offenses before the court were the only two he had committed as an adult. The State responds that the trial court's order imposing consecutive sentences is justified by the Defendant's lengthy record, including juvenile adjudications. It also argues that the Defendant has a history "of operating outside of the law," as evidenced by the multiple failed attempts at diversion. We agree with the State.

The process of imposing discretionary consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b) involves two steps. First, the trial court must find by a preponderance of the evidence that "the defendant qualifies for consecutive sentencing under one of the classifications" set forth in the statute. *State v. Perry*, 656 S.W.3d 116, 127 (Tenn. 2022) (footnote omitted). Second, the trial court must "then choose whether, and to what degree, to impose consecutive sentencing based on the facts and circumstances of the case, bearing in mind the purposes and principles of sentencing." *Id.*

In this case, the trial court imposed consecutive sentences after finding that the Defendant's criminal history was extensive. Tenn. Code Ann. § 40-35-115(b)(2). As to this category, our supreme court has recognized that trial courts "should look to those facts from which they can determine that the defendant's record of criminal activity is considerable or large in amount, time, space, or scope." *Perry*, 656 S.W.3d at 128. In doing so, trial courts must consider the following list of non-exclusive factors:

6

(1)     The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;

(2)     The time span over which the criminal activity occurred;

(3)     The frequency of criminal activity within that time span;

(4)     The geographic span over which the criminal activity occurred;

(5)     Multiplicity of victims of the criminal activity; and

(6)     Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*Id.* at 129.

When considering consecutive sentences under this category, "trial courts are not limited to considering the defendant's criminal activity or conduct that occurred after the defendant's eighteenth birthday." *State v. Banks*, 271 S.W.3d 90, 147 (Tenn. 2008). Indeed, "[t]his court has repeatedly 'approved the consideration of a defendant's history of juvenile adjudications in determining whether a defendant has an extensive record of criminal activity for consecutive sentencing purposes.'" *State v. Brown*, No. E2015-00899-CCA-R3-CD, 2016 WL 3633474, at *14 (Tenn. Crim. App. June 29, 2016), *perm. app. denied* (Tenn. Oct. 20, 2016).

Here, the record reflects that the trial court considered that the Defendant's criminal conduct occurred over a period of nine years between 2014 and 2023. Including the aggravated assault and theft convictions at issue here, the court found that the Defendant had multiple juvenile adjudications of delinquency, including for two aggravated burglaries, aggravated assault, attempted robbery, and reckless endangerment with a deadly weapon. It also noted that the Defendant had previously violated the terms of his judicial diversion by possessing marijuana and unlawfully possessing a weapon. *See State v. Jenkins*, No. W2020-00577-CCA-R3-CD, 2021 WL 3144952, at *5 (Tenn. Crim. App. July 22, 2021) (affirming consecutive sentences when the defendant violated the terms of a judicial diversion with the new offenses and "the defendant's juvenile record includes adjudications for multiple counts of theft of property, vandalism, burglary, and shoplifting"), *no perm. app. filed*.

Beyond the fact of the Defendant's convictions, the court observed that many of the juvenile adjudications would constitute felonies if committed by an adult and that the Defendant had multiple convictions involving assaults and weapons possession. From the nature of the Defendant's previous record, the trial court expressed concern that the Defendant had a pattern of "operating outside of the law" and posed a significant danger to the community. As such, it found that consecutive sentences were necessary to protect the public from further offenses by the Defendant.

The trial court considered the purposes and principles of sentencing and placed its findings and reasoning on the record. Although the Defendant argues that the juvenile history was dated and that the presentence report showed positive factors for rehabilitation, the concerns do not undermine the presumption of reasonableness to which the trial court's sentencing determination is entitled. We conclude that the trial court acted within its discretion in imposing consecutive sentences. The Defendant is not entitled to relief on this basis.

### B.     ALTERNATIVE SENTENCING

The Defendant next argues that the trial court abused its discretion by denying his request for an alternative sentence to incarceration. More specifically, the Defendant argues that the trial court did not sufficiently consider the circumstances of the offense, his criminal record, and the presentence report. The State argues that the trial court properly considered the purposes and principles of sentencing and acted within its broad discretion to deny an alternative sentence. We agree with the State.

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison County*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2019), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A) whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B) whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C) whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5) (2019).

Even if a defendant is eligible for probation, the burden of establishing suitability for probation rests with the defendant. *See* Tenn. Code Ann. § 40-35-303(b). This burden also includes showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). To that end, when considering whether a defendant has met this burden, the trial court should consider "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024), *no perm. app. filed*.

In this case, the trial court stated that it had considered the presentence investigation report, the risk and needs assessment, and the proof introduced at the sentencing hearing. Further, it considered the facts and circumstances surrounding the offenses, possible enhancement and mitigating factors, and the results of the validated risk and needs assessment. Finally, the court considered the Defendant's criminal history, potential for rehabilitation, and his testimony at the hearing.

The trial court denied an alternative sentence and ordered the effective five-year sentence to be served in confinement. It did so for two principal reasons.

First, the court was concerned with the Defendant's prior record of criminal behavior, including the Defendant's juvenile court record and the offenses before the court. It noted that many of the juvenile court offenses would have been felonies had the

9

Defendant committed the offenses as an adult and that his record involved several assault and weapons crimes. *See State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (stating that a sentencing court may consider the mitigating and enhancing factors set forth in Tenn. Code Ann. §§ 40-35-113 and -114 "as they are relevant to the sentences involving confinement"). Considering the Defendant's record, the trial court concluded that the Defendant was "a danger to the community."

Second, the trial court considered that measures less restrictive than confinement have been frequently or recently applied unsuccessfully. The trial court observed that the Defendant committed the aggravated assault while on judicial diversion and that the assault was the second violation of the diversion conditions. It also considered that the Defendant violated the conditions of juvenile probation. *See, e.g.*, *State v. Jordan*, No. M2020-00714-CCA-R3-CD, 2021 WL 3927266, at *7 (Tenn. Crim. App. Sept. 2, 2021) (denying alternative sentence, in part, when "the Defendant received the benefit of probation as a juvenile offender but violated the conditions of his release twice and also failed to appear in connection with the delinquency petition for an assault with bodily injury."), *perm. app. denied* (Tenn. Dec. 8, 2021); *cf. also State v. Rodgers*, 235 S.W.3d 92, 98 (Tenn. 2007) ("[A] prior probation violation in juvenile court may be considered as a sentence enhancement factor for an adult upon a subsequent conviction."). From these facts, the court concluded that rehabilitative efforts were unsuccessful.[1]

Pushing against these conclusions, the Defendant argues that the trial court failed to consider the mitigating evidence presented in the presentence report. He asserts that he was gainfully employed, had completed high school, and had no substance use issues. He also notes that the risk and needs assessment identified that he was at a low risk to reoffend.

From our review of the record, the trial court properly considered this mitigating evidence. The court specifically noted that it considered the arguments of counsel related to sentencing alternatives and acknowledged the low-risk score from the risk and needs assessment. In so doing, the trial court considered the purposes and principles of sentencing and fully set forth its reasoning on the record about how these principles applied in this case. As such, its judgment as to alternative sentences is entitled to a presumption of reasonableness and may be overturned only for an abuse of discretion.

---

[1] In his brief, the Defendant asserts that he did not violate the terms of juvenile probation. However, the presentence report and the juvenile court records admitted as Exhibit D during the sentencing hearing support the trial court's findings.

When reviewing a trial court's decision for an abuse of discretion, we must have "awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). We may not "second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that [we] would not have chosen." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019). Nor may we substitute our judgment for that of the trial court simply because a party believes that another choice would have been a better decision. *See State v. Willis*, 496 S.W.3d 653, 729 (Tenn. 2016).

Here, the trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the purposes and principles of sentencing, as well as the appropriate statutory and common-law factors for alternative sentencing. It then made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Even if reasonable minds could disagree with the propriety of the decision to deny probation—and we have no such disagreement—we conclude that the trial court acted within its discretion to deny an alternative sentence and impose a sentence of full incarceration. *See Caudle*, 388 S.W.3d at 279. The Defendant is not entitled to relief on these grounds.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in imposing consecutive sentences and ordering that the effective five-year sentence be served in confinement. Accordingly, we respectfully affirm the judgments of the trial court.


s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE